**LYNN'S FOOD STORES, INC., d/b/a Ye Olde Grocery Shoppe, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Acting By and Through U. S. DEPARTMENT OF LABOR, EMPLOYMENT STANDARDS ADMINISTRATION, WAGE AND HOUR DIVISION, Defendant-Appellee.**

No. 81–7747
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

July 6, 1982.

---

attached to BYU's memorandum in opposition to enforcement of the summons.

Burnside & Wall, James B. Wall, Augusta, Ga., for plaintiff-appellant.

Edmund A. Booth, Jr., Asst. U. S. Atty., Savannah, Ga., Mary-Helen Mautner, U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GOLDBERG *, HILL and HATCHETT, Circuit Judges.

GOLDBERG, Circuit Judge:

An employer brought this declaratory judgment action against the United States

---

* Honorable Irving L. Goldberg, U. S. Circuit Judge for the Fifth Circuit, sitting by designa-   tion.

Department of Labor seeking a ruling that the employer was free from liability arising under the Fair Labor Standards Act ("FLSA").[1] The plaintiff employer based its claim upon a settlement agreement signed by a group of its employees. In response, the Department of Labor argued that the settlements could have no effect in releasing the employer from liability under the FLSA. The district court agreed with the Department of Labor and dismissed the action on the grounds that the settlements violated the provisions and policies of the FLSA. We affirm.

## FACTS

After an official investigation, the Department of Labor concluded that Lynn's Food Stores, Inc. ("Lynn's") had violated FLSA provisions concerning, *inter alia*, minimum wage, overtime, and record-keeping. As a result, the Department of Labor determined that Lynn's was liable to its employees for back wages and liquidated damages.[2] After the employer's unsuccessful attempts to negotiate a settlement with the Department of Labor,[3] Lynn's approached its employees directly in an attempt to resolve the back wage claims. Specifically, Lynn's offered its employees $1000.00, to be divided among them on a pro rata basis, in exchange for each employee's agreement to waive "on behalf of himself (herself) and on behalf of the U. S. Department of Labor" any claim for compensation arising under the FLSA. Some

fourteen Lynn's employees signed the agreements, thereby accepting pro rata shares of $1000.00 in exchange for back wages which, according to Department of Labor calculations, totalled more than $10,000.00. Lynn's then brought this action in district court seeking judicial approval of the settlement.[4]

## SETTLEMENT OF BACK WAGE CLAIMS UNDER THE FLSA

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945).[5] "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System, supra* at 1445 (citations omitted).

There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employ-

1. 29 U.S.C. § 201 *et. seq.*

2. An employer who violates the FLSA is liable to its employees for both unpaid minimum wages or overtime compensation and for an equal amount in liquidated damages. 29 U.S.C. § 216(b). When an employee to whom FLSA wages and damages are owed cannot be located, the employer is not entitled to keep the funds. Instead, the money must be deposited in the U.S. Treasury. 29 U.S.C. § 216(c).

3. The Secretary of Labor has since brought suit against Lynn's to recover the back wages plus liquidated damages, and to enjoin Lynn's from future violations of the FLSA. *See* 29 U.S.C. §§ 216(c), 217.

4. Lynn's characterized its action as being one for a declaratory judgment under 28 U.S.C. § 2201.

5. "The [FLSA] was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce."
*Brooklyn Sav. Bank v. O'Neil*, 65 S.Ct. at 902.

ees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.[6]

The only other route[7] for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *See Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 928 n.8, 90 L.Ed. 1114; *Jarrard v. Southeastern Shipbuilding Corporation*, 163 F.2d 960, 961 (5th Cir. 1947).[8]

It is clear that the agreements for which Lynn's seeks judicial approval fall into neither recognized category for settlement of FLSA claims. The agreements cannot be approved under section 216(c) because they were not negotiated or supervised by the Department of Labor; and because the agreements were not entered as a stipulated judgment in an action brought against Lynn's by its employees, the agreements cannot be approved under existing case law.[9]

---

**6.** The waiver provision found in section 216(c) was intended to create an incentive for employers to voluntarily accept settlements supervised by the Department of Labor. *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977).

**7.** Plaintiffs cite 29 U.S.C. § 253 as authorizing private settlements between employers and employees of FLSA back wage claims. By its terms, however, section 253 applies only to actions which "accrued prior to May 14, 1947," the date the statute was enacted.

**8.** In *Brooklyn Bank v. O'Neil, supra*, the Supreme Court refused to give effect to a release signed by employees which waived their right to liquidated damages under the FLSA. The Court concluded that the same policies which prohibited waiver of claims for minimum wages or overtime compensation also forbade waiver of rights to liquidated damages. *Id.* at 902. The Court found that the releases signed by the employees were not "in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act;" but rather, were mere waivers of liquidated damage claims. *Id.* Thus the Court specifically left open the question whether the FLSA would permit settlement of claims between employers and employees "if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." *Id.* at 905.

In *Schulte Co. v. Gangi, supra*, the Supreme Court invalidated a settlement agreement releasing the employer from liquidated damage claims even though there was a bona fide dispute about whether the employees were covered by the FLSA. Based on the reasoning in *O'Neil*, the Court concluded, "neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." *Id.* at 929. However, the Court in dicta drew a distinction between a settlement agreement and a stipulated judgment entered in the adversarial context of an employees' suit for FLSA wages. *Id.* at 928 n.8. Finally, in *Jarrard v. Southeastern Shipbuilding Corp., supra*, the Fifth Circuit held that the Supreme Court's decisions in *O'Neil* and *Schulte* regarding settlements did *not* prohibit approval of a "solemn and binding stipulated judgment entered upon disputed issues of both law and fact" in an FLSA suit brought by employees. *Id.* at 961. Thus, the lower court's decision to accord *res judicata* effect to a stipulated judgment entered by a state court, which awarded employees overtime compensation but not liquidated damages, was affirmed.

**9.** *See* note 8, *supra*. *Thomas v. State of Louisiana*, 534 F.2d 613 (5th Cir. 1976), cited by appellants for the proposition that the Fifth Circuit recognizes the validity of agreements settling FLSA claims, is inapposite. In *Thomas*, the Court gave effect to a settlement agreement reached between the State of Louisiana and its employees. The agreement was reached subsequent to a Supreme Court decision holding that a state could not be sued for FLSA violations by its own employees, *see Employees of the Dept. of Public Health & Welfare v. Dept. of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); and prior to the enactment of an amendment to the FLSA, 29 U.S.C. § 216(b), explicitly authorizing such suits. The Court held that the settle-

Lynn's takes the position that the circumstances in which its employees signed settlement agreements essentially duplicates the adversarial context of a lawsuit brought by employees to resolve a bona fide dispute over FLSA coverage. This is precisely the position rejected by the Supreme Court in both *Brooklyn Savings v. O'Neil, supra* and *Schulte, Inc. v. Gangi, supra*; and we take this opportunity to reject it once again.

Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.[10] But to approve an "agreement" between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA. *See Brooklyn Savings Bank v. O'Neil, supra; Schulte v. Gangi, supra.*

The facts of this case illustrate clearly why this is so. Lynn's employees had not brought suit against Lynn's for back wages. Indeed, the employees seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute. There is no evidence that any of the employees consulted an attorney before signing the agreements. Some of the employees who signed the agreement could not speak English.

Lynn's offered for the record a transcription of the settlement "negotiations" between its representative and its employees. The transcript was offered as proof that the employees were not "pressured" to sign the agreements, that the settlements were strictly "voluntary." Ironically, the transcript provides a virtual catalog of the sort of practices which the FLSA was intended to prohibit. Lynn's representative repeatedly insinuated that the employees were not really entitled to *any* back wages, much less the amounts calculated by the Department of Labor. The employees were told that when back wages had been distributed as a result of past actions taken by the Department of Labor, "Honestly, most everyone returned the checks ..." It was suggested that only malcontents would accept back wages owed them under the FLSA: the representative stated, "some [employees] ... indicated informally to Mr. Lynn and to others within Lynn's Food Stores that they felt like they had been paid what they were due, and that they were happy and satisfied with the arrangements which had been made." Employees who attempted to suggest that they had been paid unfairly were told by the representative "we're not really here to debate the merits of it ..." and that the objections would be taken up at "another time". The representative summed up the proceedings with this comment, "[t]hose who feel like they've been paid fairly, we want to give them an opportunity to say so." In sum, the transcript is illustrative of the many harms which may occur when employers are

---

ment was acceptable, since it was reached at a time when the employees simply did not have any rights under the FLSA. *Thomas v. State of Louisiana,* 534 F.2d at 615. In a concurring opinion, Judge Clark emphasized that the *Thomas* holding was extremely narrow and that the holding "cannot be construed to approve nonjudicial settlements of wage and hour claims in situations removed from the unique facts of this case." *Id.*

**10.** *See* note 6, *supra.*

allowed to "bargain" with their employees over minimum wages and overtime compensation, and convinces us of the necessity of a rule to prohibit such invidious practices.

## CONCLUSION

Other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Since the agreements presented by Lynn's to the district court meet none of the above criteria, the district court was correct in refusing to approve the agreements. Accordingly, the decision of the district court is affirmed.

AFFIRMED.