[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 21, 2004
THOMAS  K. KAHN
CLERK

No. 03-14553

D. C. Docket No. 03-80259-CV-DMM

ROBERT NILAND, on behalf of himself
and all others similarly situated,

                                        Plaintiff-Appellant,

                        versus

DELTA RECYCLING CORP.,
a Florida corporation,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 21, 2004)**

Before BLACK and MARCUS, Circuit Judges, and SMITH[*], District Judge.

PER CURIAM:

_____

[*] Honorable Fern M. Smith, United States District Judge for the Northern District of
California, sitting by designation.

Robert Niland appeals the district court's grant of summary judgment to Delta Recycling Corp. (Delta) in his case seeking compensation for back overtime wages under the Fair Labor Standards Act (FLSA), as codified at 29 U.S.C. § 216. Niland argues the district court erred in holding that Delta's self-audit and payment of back wages were adequately supervised by the Department of Labor (DOL). Niland also argues the district court erred in holding he waived his right to sue when he accepted payment from Delta. We disagree and affirm.

## I. BACKGROUND

Niland was a truck driver for Delta. During Niland's employment, Delta was acquired by Allied Waste North America, Inc. (Allied). After the acquisition, Allied discovered that Delta might not have paid some of its current and former employees overtime in compliance with the FLSA. Delta contacted the DOL regarding this potential violation. The result was a Compliance Partnership Agreement (Agreement) entered into between the DOL and Delta.

The Agreement contained the following significant provisions: (1) Delta would conduct a voluntary self-audit to determine overtime wage liabilities; (2) the DOL would supervise the payment of any back wages; and (3) although Delta would not be permitted to use DOL Form WH-58 (entitled "Receipt for

2

Payment of Back Wages"), it would be allowed to use the waiver language contained in the form.

During the self-audit, Delta determined it owed back wages to Niland. On May 23, 2002, Delta sent a check along with a letter and receipt to Niland for these wages.[1] The letter was signed by Catharine Ellingsen, who was acting as Delta's corporate counsel. This letter, the receipt, and the check each indicated that acceptance constituted waiver of any legal claims. Indeed, the receipt specifically included the waiver language from DOL Form WH-58.

Niland called Ellingsen because he believed he was owed more than the check indicated. Ellingsen stated the check was for the correct amount. She then suggested Niland contact Lori Brown, an attorney in the Miami office of the firm that was serving as Delta's outside counsel. Brown told Niland an investigation had been conducted and that it had confirmed his check was for the correct amount. Neither Ellingsen nor Brown ever instructed Niland to contact the DOL, and Niland did not do so on his own.

---

[1] Niland was not contacted by the DOL, Delta, or Delta's outside counsel during the self-audit.

Niland eventually decided to cash the check, but a new check had to be issued because the original had expired. The same waiver language was printed on the new check, and Niland endorsed and cashed it on October 25, 2002.

An official DOL record obtained through the Freedom of Information Act indicated the DOL spent a total of one hour supervising the payment of back wages to Delta's employees. In reliance on this record, the district court denied Delta's motion for summary judgment.[2] In response, Delta filed a motion for reconsideration. This motion was accompanied by both an affidavit and a letter.

The affidavit was by Alfred Perry, Regional Director for the Southeast Region for the DOL at the time the Agreement was signed and implemented. In it, Perry stated the following: (1) he entered into an agreement with Delta in which he agreed to supervise the payment of back wages to various Delta employees; (2) he spent many hours over several months working on the negotiation and completion of the Delta agreement; (3) he negotiated with Delta that an independent accounting firm would calculate employees' back wages based on formulas, assumptions, and factors he approved; (4) he reviewed and approved the report of the accounting firm; (5) he negotiated the waiver language included in

---

[2] Delta's motion was originally styled as a motion to dismiss, but it was converted to a motion for summary judgment.

payments to the employees; and (6) almost all the time he spent on the case was not recorded because it was not his practice to do so.

Also accompanying the motion for reconsideration was a letter from the accounting firm hired by Delta. The letter indicated that some of the time records provided by Delta were illegible and others were unavailable. The letter also noted that it was not always possible to determine the actual amount of time an employee worked during a given pay period. Finally, the letter observed that there were sometimes discrepancies among the various sources of payroll information.

Upon reconsideration, the district court entered an order granting summary judgment in favor of Delta, from which Niland appeals.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1283 (11th Cir. 2003).

Pursuant to 29 U.S.C. § 216(c), the DOL is authorized to supervise payment of back wages owed to employees. *Lynn's Food Stores, Inc. v. United States*, 679

F.2d 1350, 1353 (11th Cir. 1982).[3]  If an employee accepts the payment of back

wages supervised by the DOL, the employee waives the right to bring suit for

unpaid wages and liquidated damages.  *Id.*

The district court concluded (1) the DOL adequately supervised the

payment of back wages here, and (2) Niland waived his right to bring suit.  Niland

argues these rulings constitute error.  We disagree.

A.      *Whether the DOL Adequately Supervised*

Niland contends the DOL failed to adequately supervise the payment of

back wages.

We are guided here by our decisions in two previous cases.  *See Lynn's*

*Food Stores,* 679 F.2d at 1352–53; *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d

537, 538–39 (5th Cir. 1977).[4]  In *Lynn's Food Stores*, we held there was

inadequate supervision where the DOL was completely uninvolved in the

---

[3] Section 216(c) provides:
The Secretary is authorized to supervise the payment of the unpaid minimum
wages or the unpaid overtime compensation owing to any employee or employees
under section [206 or 207 of this title], and the agreement of any employee to
accept such payment shall upon payment in full constitute a waiver by such
employee of any right he may have under subsection (b) of this section to such
unpaid minimum wages or unpaid overtime compensation and an additional equal
amount as liquidated damages.
29 U.S.C. § 216(c).

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this
Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to
close of business on September 30, 1981.

employer's attempt to settle a claim for back wages. *See* 679 F.2d at 1352–53. In contrast, in *Sneed,* we held there was adequate supervision where a DOL official investigated the claim for back wages, determined the amount owed the employee, presented the check to the employee on the employer's behalf, and required the employee to sign a receipt waiving his right to sue. *See* 545 F.2d at 538–39.

In this case, the Perry affidavit demonstrates that, as in *Sneed*, the DOL played a significant role in both Delta's self-audit and Delta's payment of back wages. The affidavit[5] shows the DOL entered into the Agreement with Delta under which Perry agreed to supervise the payment of back wages to various Delta employees, including Niland. Indeed, Perry specifically stated he spent many hours over several months working on the negotiation and completion of the Agreement, devoting his time to:

> (a) the review of correspondence to and from Delta representatives; (b) the negotiation and finalization of the Delta agreement; (c) the negotiation, review, and approval of formulas and assumptions to be used by an

---

[5] Niland argues that the district court erred when it granted Delta's motion for reconsideration because Perry's affidavit was not newly discovered evidence. We review for abuse of discretion. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). Pursuant to 29 C.F.R. §§ 2.21 and 2.22, Perry was not permitted to testify without permission from the DOL. Perry's testimony was not available until July 18, 2003, when the Secretary permitted Perry to submit testimony on Delta's behalf. Given that this date was after the district court's July 7, 2003, order denying Delta summary judgment, we conclude the district court did not abuse its discretion by considering the affidavit. *See Alcock*, 993 F.2d at 806.

7

independent accounting firm to calculate back wages under my supervision; (d) the negotiation of what data would be considered in those calculations; (e) the negotiation, review, and approval of language that would inform employees that their acceptance of back wages would waive their rights to sue under section 16(b) of the FLSA; (f) the negotiation, review, and approval of the documents that would contain this language, which included a letter to employees, a receipt for retroactive wage payment, and the back of a back wage check; (g) the coordination of DOL activities intended to track and manage the back wage payments, including any questions from Delta employees about the effect of accepting the back wages or how they were calculated; (h) the creation of an escrow-type account to accept back wages on behalf of Delta employees who could not be located; and (i) discussion with the director and assistant director of the DOL's Miami office about the Delta agreement and any related matters.

Perry also negotiated with Delta that an independent accounting firm would calculate employees' back wages based on formulas, assumptions, and factors that he approved. Furthermore, Perry reviewed and approved the report of the accounting firm. The facts here are thus far removed from those in *Lynn's Food Stores* where there was no DOL supervision whatsoever. *See* 679 F.2d at 1352–53.

Accordingly, we conclude the DOL—acting through Perry—adequately supervised the payment of back wages to Niland.[6]

B.      *Whether Niland Waived His Right to Bring Suit*

Niland contends that, because Delta did not use form WH-58, it is precluded from claiming that he waived his right to bring suit.  We are not persuaded.   A WH-58 is a standard form used by the DOL to inform an employee that, although he has the right to file suit under 29 U.S.C. § 216(b), acceptance of the back wages offered will result in waiver of those rights.  The DOL can either authorize an employer to use the WH-58 *or* authorize other waiver language.  *See* 29 C.F.R. § 516.2(b)(2).  Here, Perry's affidavit shows the DOL authorized the use of Delta's waiver language.  Therefore, this language was sufficient to create an enforceable waiver of Niland's right to sue.

---

[6] We do not suggest that the only way to establish the adequacy of DOL supervision is by the presentation of an affidavit by a DOL representative.

9

## III.  CONCLUSION

For the reasons stated, the district court did not err when it concluded (1) the DOL exercised adequate supervision, and (2) Niland waived his right to bring suit.

AFFIRMED.