Carlos BONETTI, Plaintiff,

v.

EMBARQ MANAGEMENT COMPANY, Defendant.

Case No. 6:07–cv–1335–Orl–31GKJ.

United States District Court, M.D. Florida, Orlando Division.

Aug. 4, 2009.

C. Ryan Morgan, Morgan & Morgan, PA, Orlando, FL, for Plaintiff.

Patrick M. Muldowney, Tracey L. Ellerson, Baker & Hostetler, LLP, Orlando, FL, for Defendant.

## ORDER

GREGORY A. PRESNELL, District Judge.

This matter came before the Court without oral argument upon consideration of the parties' Renewed Joint Motion to Approve Settlement Agreement (the "Mo-

tion") (Doc. 50), United States Magistrate Judge Gregory J. Kelly's Report and Recommendation regarding same (Doc. 51), and Plaintiff's Objection to the Report and Recommendation (Doc. 52).

## I. Background

On August 24, 2007, Plaintiff filed his Complaint asserting, *inter alia,* a claim for unpaid overtime compensation under the Fair Labor Standards Act of 1938 (the "FLSA"). *See generally* 29 U.S.C. §§ 201 to 209. In doing so, his case became one of the nearly 2,500 FLSA cases that were filed in federal court throughout the Middle District of Florida between January 1, 2007 and June 1, 2009.[1]

Indeed, Plaintiff's case is typical of most FLSA cases that have come before the Court in recent years. Plaintiff's alleged damages were relatively small (less than $10,000) and Plaintiff ultimately agreed to settle for much less ($3,000). After nearly one and one-half years of procedural wrangling, disputes over coverage and the statute of limitations, and exhaustive negotiations, however, the Court now has before it a recommendation to modify or reject the parties' settlement agreement.

The Report and Recommendation is not unique. Following binding, as well as persuasive, Eleventh Circuit case law and well-established procedures in the Orlando division regarding FLSA settlements, Judge Kelly's detailed Report and Recommendation carefully scrutinizes the parties' settlement agreement and, in particular, the attorneys' fees to be awarded to Plaintiff's counsel. In pertinent part, the Report and Recommendation notes:

> As the Court interprets the *Lynn Foods* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the

---

1. Within the Orlando Division alone, nearly 1,000 FLSA cases were filed during this time.

reasonableness of the attorneys' fees provision under the parties' settlement agreement using the lodestar method. . . . [A]ny compensation for attorneys' fees beyond that justified by the lodestar method are unreasonable [and the settlement should be rejected] unless exceptional circumstances would justify such an award.

(Doc. 51 at 4). After reviewing the market for attorneys' fees in the Orlando area, the complexity of the work involved, Plaintiff's counsel's fee awards in similar cases, and counsel's billing sheets and time records, Judge Kelly recommends that the fees awarded to Plaintiff's counsel be reduced by $385 and that this sum should be awarded to Plaintiff. Although the parties agreed that Plaintiff should receive $1,250 in unpaid overtime compensation, $1,250 in liquidated damages, and $500 in consideration of a general release of his claims, and that Plaintiff's counsel should receive a fee of $2,500, Judge Kelly recommends that the Court "re-allocate" these funds and modify the parties' settlement agreement as follows:

(1) $1,250 to Plaintiff for unpaid overtime compensation;

(2) $1,250 to Plaintiff for liquidated damages;

(3) $385 to Plaintiff for the excess amount above the lodestar; and

(4) $2,114.50 to Plaintiff's counsel.

(Doc. 51 at 7).[2]

Plaintiff's counsel objects to the Report and Recommendation. While taking exception to his hourly rate, Plaintiff's counsel also contends that the Court should not modify or alter an otherwise valid, negotiated settlement agreement that reflects a careful and deliberate compromise of the parties' dispute. (Doc. 52).

The Court addresses the Report and Recommendation and Plaintiff's objections thereto, *infra*. In doing so, the Court attempts to resolve a recurring problem: the extent to which it should inject itself into the process of approving FLSA settlements.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. The Fair Labor Standards Act

### A. History and Enforcement

Originally enacted in 1938, the FLSA was meant "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (quoting 29 U.S.C. § 202(a)). In contrast to prior legislation that was aimed at reforming general work conditions by promoting collective action, "the FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work.'" *Id.* (citations omitted). These individual protections include, *inter alia,* the right to receive a minimum wage and overtime compensation at a rate not less than one and one-half times an employee's regular rate of pay for hours worked in excess of forty per week. 29 U.S.C. §§ 206(a) and 207(a)(2).

Enforcement of the FLSA is quite broad. In addition to empowering the Secretary of the Department of Labor to enforce the FLSA, 29 U.S.C. § 216(c),

---

**2.** The Report and Recommendation does not address the $500 in consideration of Plaintiff's general release.

Congress also afforded individual employees access to the courts and armed them with a private cause of action. 29 U.S.C. § 216(b); *see also Barrentine*, 450 U.S. at 739, 101 S.Ct. 1437. Any aggrieved employee may bring a claim under the FLSA "in any Federal or State court of competent jurisdiction." *Id.* There are no exhaustion or administrative requirements and, unlike some federal statutory rights, there is no jurisdictional minimum. *Cf.* 15 U.S.C. § 2310(d)(3)(b) (imposing $50,000.00 jurisdictional minimum to assert Magnuson–Moss Warranty Act claims in federal court). Congress also provided an incentive to sue—liquidated (double) damages and attorneys' fees. 29 U.S.C. § 216(b).[3]

## B. The FLSA in the Middle District of Florida

The Middle District of Florida has experienced a large influx of FLSA litigation over the past few years. A Westlaw and LexisNexis search of FLSA case law reveals that a surprisingly large number of the published and unpublished district court decisions regarding the FLSA originate in this District. Indeed, nearly 2,500 FLSA cases were filed here in 2007 and 2008, and approximately 20% of all civil cases pending in this District are FLSA lawsuits.

To address the sheer volume of FLSA cases, the judges of the Orlando Division promulgated a separate scheduling order specifically tailored to FLSA cases. The FLSA Scheduling Order requires the parties, *inter alia*, to quickly produce all documents relating to the plaintiff's claims; directs the plaintiff to answer Court Inter-

rogatories and provide a detailed accounting of his claim; mandates that the parties engage in a good faith settlement conference before filing a settlement report with the Court; and otherwise stays all discovery until all preliminary efforts at settlement have been exhausted.[4]

By requiring a timely exchange of discovery at the very outset of the litigation, the scheduling order encourages the parties to quickly resolve their case. And the FLSA Scheduling Order has largely been effective in this regard. Most FLSA cases now generally settle early-on in the litigation process. However, this gives rise to another issue: what is the proper role of the Court in approving these thousands of settlements?

## C. Court Approval of FLSA Settlements

In *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982) [hereinafter "*Lynn's Food*"], the Eleventh Circuit held that, unless supervised or brought by the Secretary of Labor, the settlement of an FLSA claim can only have binding, res judicata effect if the settlement is the product of adversarial litigation and is approved by the court. Specifically, the Circuit Court rejected the notion that a private employer could approach its unrepresented employees directly and enter into a private settlement agreement that would have preclusive effect in subsequent litigation. Relying mostly on two Supreme Court precedents that prohibited prospective waivers of employees' FLSA rights—*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946) and *Brooklyn Sav. Bank v.*

---

**3.** In pertinent part, 29 U.S.C. § 216(b) provides: "The court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**4.** A blank copy of the Orlando Division's Standard FLSA Scheduling Order is attached hereto. The current Scheduling Order will have to be modified in accordance with this Order.

*O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)—the Circuit Court noted:

> There are only two ways in which back wage claims under the FLSA can be settled or compromised by employees. First ... the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment ... thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.

*Lynn's Food,* 679 F.2d at 1352–53.

With respect to the second route, the Court went on to conclude:

> Settlements may be permissible in the context of a suit brought by employees ... because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the [court] to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

In a subsequent, unpublished decision, the Eleventh Circuit appears to have held that, where the plaintiff and his counsel have entered into a contingency fee agreement, the court must "review the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller,* 307 Fed.Appx. 349, 351 (11th Cir.2009) (unpublished) [hereinafter "*Silva*"].[5] On its face, the holding in *Silva* is limited to contingency fee agreements, where there is an inherent potential conflict between the economic interests of the lawyer and his client. *Id.* at 351–52.

## III. Analysis

■ The judges in the Orlando division have construed *Lynn's Food* as requiring court approval of any FLSA settlement which involves a compromise of the plaintiff's claims.[6] Broadly construed, a compromise would entail any settlement where the plaintiff receives less than his initial demand.[7] *Lynn's Food* supports this

---

**5.** Pursuant to 11th Cir. R. 36–2, "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

**6.** If the parties submit a stipulation stating that the plaintiff's claims will be paid in full, without compromise, there is no need for the Court to review the settlement. *See Mackenzie v. Kindred Hosps. E., LLC,* 276 F.Supp.2d 1211, 1217 (M.D.Fla.2003) (noting that *Lynn's Food* "addresses judicial oversight of 'compromises' of FLSA claims.... There is no need for judicial scrutiny where, as here, the defendant represents that it has offered the plaintiff more than full relief, and the plaintiff has not disputed that representation.").

**7.** A settlement in which the plaintiff would receive every penny of the wages or overtime he originally claimed was due may nonetheless be seen as a compromise—if, for example, the plaintiff waves his right to recover liquidated damages—thereby requiring judicial approval.

premise. But the question becomes, how does the Court fulfill its obligation to discern the reasonableness of an FLSA settlement?

Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.[8] Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."

Lacking the factual basis to question the reasonableness, per se, of the amount that would be paid to the plaintiff, the judges of this Court have instead focused on the element over which they have knowledge—the reasonableness of the fees that would be paid to the plaintiff's counsel. Thus, if a compromise is proposed for court approval, the Court, relying on *Silva*, routinely looks at the agreed payment to plaintiff's counsel as an element of the settlement package. Even if the parties agree on the amount of the fees to be paid to the plaintiff's counsel, the settlement will not be approved if the Court determines that the plaintiff's legal fees are "unreasonable." *See, e.g., Shannon v.*

*Saab Training USA, LLC,* Case No. 6:08–CV–803, 2009 WL 1773808 (M.D.Fla. June 23, 2009) (rejecting settlement agreement because plaintiff's counsel would be entitled to "too high" a fee and further noting that "no attorneys' fees in excess of the amount set forth as reasonable in this Order will be permitted by private agreement or otherwise"). This, in the Court's opinion, is wrong-headed and not required by the terms of the FLSA, its underlying policy objectives, or binding precedent.

First, there is a significant question as to whether *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946) and *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)—the bedrocks upon which *Lynn's Food* and *Silva* rest—are still apposite in light of various amendments to the FLSA in the last sixty-plus years. *See, e.g., Martinez v. Bohls Bearing Equip. Co.,* 361 F.Supp.2d 608 (W.D.Tex.2005) (exhaustively reviewing the text and legislative history of the FLSA, as well as Supreme Court and Fifth Circuit precedents regarding settlements of FLSA claims, and concluding that a private release signed by an employee waiving his rights under the FLSA was valid and enforceable).

Second, and more importantly, the present approach to approving FLSA settlements rests on a tenuous assumption concerning the relationship between an attorney and his client. Specifically, it assumes that if the plaintiff's counsel receives a fee that is higher than what the Court deems reasonable, then the overall fairness of the settlement is adversely affected. This presupposes that a higher fee to the plaintiff's counsel was necessarily obtained at the plaintiff's expense.[9] In

---

**8.** Such a transaction would conform to the widely accepted definition of "fair market value"—*i.e.,* "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *See,*

*e.g., U.S. v. Cartwright,* 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973).

**9.** Indeed, the Report and Recommendation in this case recommends that Plaintiff's counsel receive $385 less than his requested fee and

other words, this rationale assumes that any plaintiff's lawyer who negotiates a fee that is "unreasonable" in the Court's eye has breached his fiduciary and professional duty to his client. But, absent some objective basis for questioning counsel's conduct,[10] there is simply no reason for the Court to undermine the parties' agreement.

Lawyers are often faced with a conflict between their own economic interests and the welfare of their clients. This conflict arguably exists whenever contingent fee agreements are involved and is precisely what the Eleventh Circuit sought to address in *Silva*. Absent evidence to the contrary, however, the Court should assume that the plaintiff's lawyer has abided by his ethical obligations and avoided the temptation to place his own interest ahead of his client's.

With this in mind, the Court finds that the best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.

■ In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff,

then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

■ In the instant case, the parties represented to the Court that Plaintiff would receive a net recovery of $3,000 (comprised of $1,250 in overtime compensation, $1,250 in liquidated damages, and $500 in consideration of his general release of his claims) and that Plaintiff's counsel would receive $2,500 in attorneys' fees and costs. (Doc. 50 at 3). The parties further represented that this case involved disputed issues regarding the computation of the number of hours that Plaintiff worked and the applicability of the statute of limitations. (Doc. 50 at 3). However, the Motion does not address whether Plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to Plaintiff. Accordingly, the Court will require the parties to amend the Motion to address this point.

## IV. Conclusion

Based on the foregoing, it is **OR-DERED** that Plaintiff's Objection to the Report and Recommendation (Doc. 52) is **SUSTAINED**. The Court declines to adopt the Report and Recommendation (Doc. 51).

---

that the Court reallocate these sums to Plaintiff.

**10.** Such a basis might include, for example, evidence that the plaintiff will receive less

money than was represented to the Court, due to an undisclosed contingency fee arrangement. The Court has encountered and condemned this practice in previous FLSA cases.

It is **FURTHER ORDERED** that the parties shall file an Amended Joint Motion to Approve Settlement Agreement that is consistent with this Order.

ATTACHMENT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**Plaintiff,**

v.

**Defendant.**

Case No

**SCHEDULING ORDER**

Pursuant to FED.R.CIV.P. 16, the Court finds it necessary to implement a schedule tailored to meet the particular circumstances of this case, which is based on the Fair Labor Standards Act ("FLSA"). Therefore, consistent with the just, speedy and inexpensive administration of justice (FED.R.CIV.P. 1), it is

**ORDERED** that the provisions of Rule 26(a)(1) and Local Rule 3.05(c)(2)(B) and (d) concerning the initial disclosures and filing of a case management report are hereby waived in this case. Instead, the parties shall comply with the following schedules.

1. By [_____ (21 days from the date this Order is issued)], the parties shall serve upon each other (but *not* file) copies of the following:

Plaintiff[1] All documents in Plaintiff's possession, custody or control that pertain to the unpaid wages claimed in the Complaint.

Defendant: All time sheets and payroll records in Defendant's possession, custody or control that pertain to work performed by Plaintiff during the time period for which Plaintiff claims unpaid wages.

2. By [_____ (42 days from the date this Order is issued)], and no earlier, Plaintiff shall answer the Court's Interrogatories (attached to this Order) under oath or penalty of perjury, serve a copy on Defendant, and file the answers with the Court entitled "Notice of Filing Answers to Court's Interrogatories."

3. In collective actions, an exchange of documents as referenced in Paragraph 1 shall occur with respect to opt-in Plaintiffs who join the action prior to the dissemination of a court-approved opt-in notice. Said exchange of documents shall occur within twenty (20) days of their filing of opt-in notices with this Court, and such opt-in Plaintiffs shall thereafter file and serve their respective answers to the Court's Interrogatories within an additional twenty (20) days.

4. By [_____ (70 days from the date this Order is issued)], after Plaintiff serves answers to the Court's Interrogatories, counsel for Plaintiff and Defendant shall meet and confer in person in a good faith effort to settle all pending issues, including attorneys' fees and costs.[2] The parties, including a representative of each corporate party with full settlement authority, shall be available by telephone during the conference to consider and approve any settlement negotiated by counsel. Counsel shall have full authority to settle, and shall set aside sufficient time for a thorough, detailed, and meaningful conference that is calculated to fully resolve the case by agreement.

5. By [_____ (90 days from the date this Order is issued)], after the settlement

---

1. If there is more than one plaintiff or defendant, the singular reference to plaintiff or defendant shall include the plural.

2. In the case of an individual party who is not represented by counsel, the individual shall comply with the provisions of this Order.

conference, counsel shall jointly file a Report Regarding Settlement that notifies the Court whether: (1) the parties have settled the case; (2) the parties have not settled the case but wish to continue settlement discussions for a specific period of time; (3) the parties wish to engage in a formal mediation conference before a specific mediator on or before a specific date; (4) either party requests a settlement conference before the United States Magistrate Judge who upon the consent of the parties shall have the authority to approve the settlement as a 'fair and reasonable resolution of a bona fide dispute' over FLSA issues without additional filings made by the parties. See *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir.1982); or (5) the parties have exhausted all settlement efforts and will immediately file a Case Management Report[3] signed by counsel for all parties.

6. The parties may consent to the conduct of all further proceedings in this case by the United States Magistrate Judge (consent form attached). Absent consent, the Magistrate Judge shall prepare a report and recommendation as to whether any settlement is a 'fair and reasonable resolution of a bona fide dispute' over FLSA issues. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir.1982).

7. Until the parties file the Case Management Report, all discovery in this case is **STAYED**, except as provided in this Order.

8. In the event that no settlement is reached pursuant to these procedures, and this Court later grants a motion permitting notice to be sent to similarly situated indi-

viduals advising them of their right to opt-in to this action, the limitations period for any person receiving notice shall be tolled during the period from the date of this Order until the parties file a Case Management Report lifting the stay on these proceedings.

9. Should the parties settle the dispute at any later time, they shall immediately advise the Court as required by Local Rule 3.08(a) and promptly submit a joint motion to approve the settlement.

10. Due to the volume of cases based on the FLSA, the Court expects strict adherence to these deadlines. Exceptions will be granted only for compelling reasons. Failure to comply may result in the imposition of sanctions, including but not limited to the dismissal of the case and the striking of pleadings.

11. Either party, for good cause shown, may move to alter this schedule should the circumstances so warrant.

**DONE** and **ORDERED** in Chambers in Orlando, Florida, on _____, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Parties

### COURT'S INTERROGATORIES TO PLAINTIFF

1. During what period of time were you employed by the Defendant?
2. Who was your immediate supervisor?
3. Did you have a regularly scheduled work period? If so, specify.
4. What was your title or position? Briefly describe your job duties.
5. What was your regular rate of pay?
6. What is the nature of your claim (check all that apply)?

---

3. CMR forms are available online at http://www.flmd.uscourts.gov. Select Judicial Information, District Judges, and, under the appropriate judge's name, Case & Trial Management Forms.

___ Off the clock work (Defendant failed to record, or prohibited you from recording, all of your working time);

___ Misclassification (Defendant mistakenly classified you as exempt from overtime);

___ Miscalculation (Defendant failed to correctly calculate your compensation);

___ Other (Please describe): _____

_____

7. Provide an accounting of your claim, including:

(a) dates

(b) regular hours worked

(c) over-time hours worked

(d) pay received versus pay claimed

(e) total amount claimed

8. If you have brought this case as a collective action:

(a) Describe the class of employees you seek to include in this action.

(b) Has an opt-in notice been filed for every potential opt-in Plaintiff who has identified himself or herself as a person who wishes to join this action?

9. Please specify all attorney's fees and costs incurred to date. With respect to attorney's fees, please provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.

10. When did you (or your attorney) first complain to your employer about alleged violations of the FLSA?

11. Was this complaint written or oral? (If a written complaint, please attach a copy).

12. What was your employer's response? (If a written response, please attach a copy).

_____

Name of Plaintiff

STATE OF FLORIDA
COUNTY OF _____

BEFORE ME, the undersigned authority, on this day, personally appeared Name of Plaintiff, who being first duly sworn, deposes and says that he/she has read the foregoing Answers to Interrogatories, knows the contents of same, and to the best of his/her knowledge and belief, the same are true and correct.

SWORN TO AND SUBSCRIBED before me on this _____ day of _____, 2009.

NOTARY PUBLIC

Notary Stamp

_____
Signature of Person Taking Acknowledgment
Print Name:
Title: Notary Public
Serial No. (If any):
Commission Expires:

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Plaintiff,

-vs- Case No

Defendant.

_____ _____ _____

**NOTICE, CONSENT, AND REFERENCE OF A CIVIL ACTION TO A MAGISTRATE JUDGE**

*Notice of a magistrate judge's availability.* A United States magistrate judge of this court is available to conduct all proceedings in this civil action (including a jury or nonjury trial) and to order the entry of a final judgment. The judgment may then be appealed directly to the United States court of appeals like any other judgment of this court. A magistrate judge may exercise this authority only if all parties voluntarily consent.

You may consent to have your case referred to a magistrate judge, or you may withhold your consent without adverse substantive consequences. The name of any party withholding consent will not be revealed to any judge who may otherwise be involved with your case,

*Consent to a magistrate judge's authority.* The following parties consent to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings.

| *Parties' printed names* | *Signatures of parties or attorneys* | *Dates* |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**REFERENCE ORDER**

IT IS ORDERED that this case be referred to a UNITED STATES MAGISTRATE JUDGE for all further proceedings and order the entry of a final judgment in accordance with 28 U.S.C. 636(c), Fed. R. Civ. P. 73..

_____ _____
DATE UNITED STATES DISTRICT JUDGE

NOTE: RETURN THIS FORM TO THE CLERK OF THE COURT ONLY IF YOU ARE CONSENTING TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE. DO NOT RETURN THIS FORM TO A JUDGE.