706 F.Supp.2d 1227 (2010)
John DEES, Plaintiff,
v.
HYDRADRY, INC., et al., Defendants.
Case No. 8:09-cv-1405-T-23TBM.
United States District Court, M.D. Florida, Tampa Division.
April 19, 2010.
*1231 Carlos V. Leach, Morgan & Morgan, PA, Orlando, FL, for Plaintiff.
Richard W. Smith, Fisher, Rushmer, Werrenrath, Dickson, Talley, & Dunlap, PA, for Defendant.

ORDER
STEVEN D. MERRYDAY, District Judge.
John Dees sues (Doc. 1) his former employer to recover overtime compensation due under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"). The parties announce a settlement and submit a "Joint Stipulation for Dismissal With Prejudice." (Doc. 13) Although a private settlement and stipulation for dismissal ends the typical case without judicial intervention, the Eleventh Circuit requires the district court to review the settlement of an FLSA claim. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir.1982).[1] The congressional purpose of the FLSA and the public's interest in the transparency of the judicial process decisively inform both the procedure and the standard applicable to a district court's review of an FLSA settlement.

I. The FLSA, Private Agreement, and Supervised Compromise
The FLSA embodies a congressional intent to ensure that "all our able-bodied working men and women [receive] a fair day's pay for a fair day's work." Letter to Congress from President Franklin D. Roosevelt (May 24, 1937) (reprinted in H.R.Rep. No. 101-260 (Sept. 26, 1989), 1989 U.S.C.C.A.N. 696-97). By enacting the FLSA, Congress sought "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce."[2]Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706, 65 S.Ct. 895, 89 *1232 L.Ed. 1296 (1945). Combatting the typically unequal bargaining power between employer and employee, the FLSA imposes both a minimum wage and an overtime wage for each of several categories of employee. See 29 U.S.C. § 206 (establishing a minimum wage); 29 U.S.C. § 207 (providing that no employer shall require an employee to work "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed"). To ensure compliance with the overtime and minimum wage provisions, the FLSA permits an employee to sue his employer to recover unpaid wages, an additional and equal amount as liquidated damages, and a reasonable attorney's fee.[3]
The FLSA prohibits a private agreement altering an employee's right to a minimum wage and overtime. For example, the employer and the employee may not agree for the employee to work prospectively for an overtime rate of one-and-a-quarter times the regular hourly rate; the FLSA requires one-and-a-half times the regular hourly rate. Although prohibiting a contract that restricts the FLSA rights of an employee, the FLSA leaves unanswered whether an employee may compromise a claim for unpaid wages.[4]

A. Private Agreement and Unsupervised Waiver of FLSA Rights
The Supreme Court first addressed the issue of compromise and waiver of FLSA rights in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), in which the bank employed O'Neil as a night watchman for approximately two years but failed to pay O'Neil $423.16 for overtime wages due under the FLSA. Two years after O'Neil ceased his employment, the bank offered O'Neil $423.16 in exchange for O'Neil's releasing his rights under the FLSA. The parties disputed neither the amount of wages owed nor the bank's status as a covered employer under the FLSA. O'Neil signed the release but later sued the bank to recover liquidated damages. Enforcing the release, the trial court dismissed O'Neil's claim.
Invalidating the release, Brooklyn Savings Bank holds that an employee who accepts delayed payment of wages due under the FLSA may not waive the right to *1233 recover liquidated damages. Focusing on the absence of evidence that the release "was obtained as a result of the settlement of a bona fide dispute between the parties with respect to coverage or amount," Brooklyn Savings Bank finds that the release "constituted a mere waiver of [O'Neil's] right to liquidated damages." 324 U.S. at 703, 65 S.Ct. 895. O'Neil's waiver contravened the congressional policy implemented by the FLSA:
[A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy. Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.
. . . .
The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.
324 U.S. at 705-08, 65 S.Ct. 895 (citations and footnotes omitted). Brooklyn Savings Bank declines to determine the validity of a private agreement that settles a bona fide dispute over an FLSA claim.
One year later, D.A. Schulte v. Gangi, 328 U.S. 108, 114, 66 S.Ct. 925, 90 L.Ed. 1114 (1946), broadened the holding in Brooklyn Savings Bank and held that "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage."[5] In *1234 Gangi, several maintenance employees worked for the owner of an office building in New York City. Following Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942), which holds that the FLSA covers maintenance employees in a building occupied by a manufacturer producing goods for interstate commerce, the employees in Gangi demanded unpaid overtime wages and liquidated damages from their employer. Because the employees in Gangi worked in a building whose tenants shipped no goods in interstate commerce, the employer disputed the employees' right to overtime pay. Under threat of suit, however, the employer fully compensated the employees for unpaid overtime due under the FLSA in exchange for a release from any further FLSA claim.
After signing a release, the employees sued to recover liquidated damages. Despite the parties' bona fide dispute whether the FLSA covered the employer, the Supreme Court refused to enforce the release:
In a bona fide adjustment on coverage, there are the same threats to the public purposes of the [FLSA] that exist when the liquidated damages are waived. The damages are at the same time compensatory and an aid to enforcement. It is quite true that the liquidated damage provision acts harshly upon employers whose violations are not deliberate but arise from uncertainties or mistakes as to coverage. Since the possibility of violations inheres in every instance of employment that is covered by the Act, Congress evidently felt it should not provide for variable compensation to fit the degree of blame in each infraction. Instead Congress adopted a mandatory requirement that the employer pay a sum in liquidated damages equal to the unpaid wages so as to compensate the injured employee for the retention of his pay.
It is realized that this conclusion puts the employer and his employees to an "all or nothing gamble," as Judge Chase phrased the result in his dissent below ([Ceco Steel Products Corp. v. C.I.R.], 150 F.2d 698 [8th Cir.1945]). Theoretically this means each party gets his just deserts, no more, no less. The alternative is to find in the Act an intention of Congress to leave the adjustments to bargaining at the worst between employers and individual employees or at best between employers and the employees' chosen representatives, bargaining agent or some other. We think the purpose of the Act, which we repeat from the [Brooklyn Savings Bank] case was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage. Such a compromise thwarts the public policy of minimum wages, promptly paid, embodied in the [FLSA], by reducing the sum selected by Congress as proper compensation for withholding wages.
328 U.S. at 115-16, 66 S.Ct. 925. Thus, Gangi offers an employer that disputes FLSA coverage only two choices. The employer must either (1) pay employees the disputed wage or (2) litigate the coverage issue and risk paying liquidated damages in addition to the unpaid wage. The employer may not privately resolve the coverage issue by compromising with an individual employee. Although prohibiting purely private compromise, Brooklyn Savings *1235 Bank and Gangi leave unanswered whether an employee may compromise a claim with supervision by the district court.

B. The Eleventh Circuit Permits an FLSA Compromise Supervised by Either the District Court or the Department of Labor
In Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir.1982), after an official investigation, the Department of Labor determined that Lynn's Food Stores failed to pay employees the minimum wage and overtime required by the FLSA. Lynn's Food Stores attempted to negotiate a compromise with the Department of Labor. After the negotiation failed, Lynn's Food Stores approached its employeesall of whom were unrepresented by counsel and many of whom spoke no Englishto resolve the FLSA claims individually. Many of the employees remained unaware that the Department of Labor had found that Lynn's Food Stores owed the employees more than $10,000.00 in back wages. Lynn's Food Stores offered the employees "$1,000.00, to be divided among them on a pro rata basis, in exchange for each employee's agreement to waive `on behalf of himself (herself) and on behalf of the U.S. Department of Labor' any claim for compensation arising under the FLSA." 679 F.2d at 1352. Fourteen employees signed a waiver and accepted a pro rata share of the $1,000.00.
After the Department of Labor rejected the compromise, Lynn's Food Stores sued the Department of Labor in district court for a declaratory judgment approving the compromise with the fourteen employees. Affirming the district court's refusal to enforce the employees' written waivers of their FLSA rights, the Eleventh Circuit held that the FLSA permits an employee only two avenues for compromising an FLSA claim. First, an employee may accept a compromise supervised by the Department of Labor.[6] By accepting the compromise, the employee waives the right to sue for the unpaid wages.[7] Second, if an employee sues for back wages under the FLSA, the parties may present a proposed compromise to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d at 1353.
The Eleventh Circuit noted that "FLSA rights cannot be abridged by contract or otherwise waived because this would `nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." 679 F.2d at 1352 (quoting Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)). Nevertheless, the Eleventh Circuit permits compromise of an FLSA claim under certain circumstances:
Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because *1236 initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation. But to approve an "agreement" between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA.
679 F.2d at 1354. Thus, an employee may compromise a claim if the district court determines that the compromise "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1354.
Lynn's Food's approval requirement remains unique to the Eleventh Circuit, although other circuits refuse to enforce a written waiver of FLSA rights.[8] Although, at first glance, requiring a district court to approve each FLSA compromise appears unnecessary, Martinez v. Bohls Bearing Equip. Co., 361 F.Supp.2d 608 (W.D.Tex.2005), illustrates the problem with permitting unsupervised, private compromise. In Martinez, an employee sued his employer for overtime after accepting $1,000.00 to compromise a dispute over hours worked and "actual rate of pay." Enforcing the employee's release, negotiated without approval of either the Department of Labor or a district court, Martinez states, "The move away from the rigid interpretation of statutory rights of the 1940s to a regime which supports settlement as a favored means of resolving disputes supports the holding that a compromise and release of FLSA rights involving a bona fide dispute as to liability, such as the amount of hours worked or compensation due, is not prohibited." 361 F.Supp.2d at 630.
Although leaving the definition of "bona fide dispute" unstated, Martinez decides that only a "bona fide dispute" under the FLSA is subject to private compromise and that, apparently, a category of non"bona fide" FLSA disputes requires approval by the Department of Labor or the district court. Martinez omits an explanation of the mechanism by which, absent involvement by the Department of Labor or the district court, the bona fides of the dispute are reliably identified. On the other hand, Lynn's Food requires approval of each FLSA compromise, regardless of the *1237 issue that underlies the compromise. In practice, leaving an FLSA settlement to wholly private resolution conduces inevitably to mischief.
An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA (plus, with savvy negotiation, a confidentiality agreement to preclude the spread to other employees of information about the FLSA). If approval is required, the discount might become unavailable and the undiscounted principal owed the employee might increase (for example, as a result of liquidated damages or a more refined damage computation), both of which unhappy prospects conduce to voluntary compliance by the employer. The Eleventh Circuit in Lynn's Food and perforce this district court proceed on the logical and salutary premise that the FLSA, a statute famously designed to preempt in certain particulars the possibility of private agreement, remains immune to the unsupervised intrusion of a private agreementa result much more compelling than Martinez's dicey rejection of the Supreme Court's allegedly "rigid interpretation."[9]
In sum, an employer undertakes the private resolution of an FLSA dispute at his peril. If the employer pays the employee in full, including all wages owed and liquidated damages, the employee retains no uncompensated FLSA claim and the peril dissipates. However, if the employer extracts a compromise, the release of an FLSA claim approved by neither the Department of Labor nor the district court remains unenforceable.[10]See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 708, 65 S.Ct. 895, 89 L.Ed. 1296 *1238 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."). The employer remains liable for the unpaid wages, and the employee may sue to recover any wages (or liquidated damages) allegedly compromised by private agreement. An employee's compromise and release of his FLSA rights is enforceable in only a narrow and confined circumstance. If an employee sues his employer for back wages, if the parties propose a compromise that resolves a bona fide dispute and furthers the purpose of the FLSA, and if the district court approves the compromise, the employer obtains an enforceable release.

II. Implementing Lynn's Food: Determining the Existence of a Compromise
If an employee sues an employer for back wages under the FLSA, Lynn's Food permits only one method for the parties to compromise the employee's claim. After determining that a proposed compromise "is a fair and reasonable resolution of a bona fide dispute," that is, a fair and reasonable compromise of a matter susceptible to compromise, the district court may approve the compromise. To avoid Lynn's Food's requirement for judicial approval, some employers attempt to "moot" the controversy and avoid judicial scrutiny by stipulating that a compromise "fully compensates" the employee for his FLSA claim, including actual and liquidated damages, attorneys' fees, and costs. For example, in the present case, the parties' stipulation for dismissal states:
The Defendant has agreed to pay Plaintiff for all overtime owed in full, without compromise. ($550 in Actual Damages, $550 in Liquidated Damages). Defendant agreed to separately pay Plaintiff attorney's fees and costs of $2,900 ($1,900 in attorney's fees; $1,000 in costs). As such, no judicial scrutiny is needed.
(Doc. 13) The parties rely on Mackenzie v. Kindred Hospitals East, LLC, 276 F.Supp.2d 1211, 1217 (M.D.Fla.2003), for the proposition that an employee's receiving "full compensation" obviates the need for judicial scrutiny of an FLSA compromise. But the anomalous facts and narrow holding in Mackenzie offer no support for the broad exception to Lynn's Food proposed by the parties.
In Mackenzie, a pharmacist sued his employer to recover unpaid overtime wages due under the FLSA. Purporting to act as a representative of other pharmacists entitled to overtime compensation from the employer, the pharmacist styled his complaint as a collective action.[11] The *1239 employer served the pharmacist with an offer of judgment for $1,200.00 plus costs and a reasonable attorney's fee, which fully compensated the pharmacist for the alleged FLSA violation. After the pharmacist declined the offer, the employer moved to dismiss the action as moot. Contending that an offer of judgment under Rule 68, Federal Rules of Civil Procedure, is inappropriate in an FLSA collective action, the pharmacist moved both to strike the offer of judgment and "to facilitate court-authorized notice of this lawsuit to potential collective action members."[12] 276 F.Supp.2d at 1213. Noting the pharmacist's failure to identify another similarly situated pharmacist who expressed interest in joining the action, the court rejected the propriety of proceeding in a collective action and denied the motion "to facilitate court-authorized notice."[13]
Because only the pharmacist's individual FLSA claim remained, the magistrate judge considered the effect of the employer's offer of judgment. The magistrate judge investigated the existence of any "side deal" or condition not present on the face of the employer's offer. The magistrate judge found no "compromise" requiring approval under Lynn's Food because the offer fully compensated the pharmacist for the FLSA claim. Accordingly, the magistrate recommended entry of judgment in favor of the pharmacist for the amount of the employer's offer of judgment. In approving the magistrate judge's report and recommendation, I cautioned:
The result in this case undoubtedly would differ if the plaintiff offered some material evidence of other willing and similarly situated claimants. Of course, in all instances, the court should guard *1240 against a defendant's misuse of the procedure employed in this case. A dismissal for mootness is a tool to comply with the jurisdictional limitations imposed by the Constitution of the United States and not a ploy for an agile defendant to escape compliance with the Fair Labor Standards Act.
276 F.Supp.2d at 1213 n. 1.
Mackenzie remains sound, but if the parties' proposed "full compensation" agreement includes an additional term such as the forbearance of a valuable right of the employee, including perhaps one of the employee's FLSA rights, or the exchange of another valuable consideration of any kindthe notion of "full compensation" becomes illusory and inapplicable (and the MacKenzie mechanism becomes unavailable).[14]
For example, the employer in an FLSA case might offer full monetary compensation to the employee for the FLSA claim but might require the employee to refrain from informing fellow employees about the result the employee obtained. Or the employer might require the employee to trim the shrubbery at the employer's home each weekend for a year. In either instance, the employee outwardly receives full monetary compensation for his unpaid wages, but effectively the additional term (the "side deal") confers a partially offsetting benefit on the employer. To the extent that the employee receives a full wage but relinquishes something else of value, the agreement (even if exhibited to the court as a stipulation for "full compensation" or an offer of judgment) involves a "compromise," and Lynn's Food requires judicial approval of the compromise. See Silva v. Miller, 307 Fed.Appx. 349, 351 (11th Cir.2009) ("On its face, Lynn's Food suggests no exception to judicial oversight of settlements when the employee receives all wages due; it offers no support for the even broader exception proposed by [the plaintiffs attorney] that would include all counseled settlements."). Announcing an exceedingly narrow and patently obvious "exception" to Lynn's Food, Mackenzie finds only that, after judicial inquiry confirms both "full compensation" and "no side deal" (in other words, the absence of compromise), no further judicial inquiry is necessary. In every other instance, Lynn's Food requires plenary review by the district court.

III. Evaluating an FLSA Compromise
Lynn's Food requires the parties to an FLSA compromise to present the proposed agreement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness."[15] 679 F.2d at 1353. Although noting the unfairness of the settlements at issue, Lynn's Food specifies no criteria for evaluating the "fairness" of a proposed compromise in a different case. Bonetti v. Embarq Management Co., ___ F.Supp.2d *1241 ___, ___, 2009 WL 2371407, at 4 (M.D.Fla. Aug. 4, 2009), describes the problem faced by a district court:
Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."
Nevertheless, the district court must "scrutinize the settlement for fairness." To fully implement the policy embodied by the FLSA, the district should scrutinize the compromise in two steps. First, the court should consider whether the compromise is fair and reasonable to the employee (factors "internal" to the compromise). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (factors "external" to the compromise). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.

A. Internal Factors: Is the Compromise Fair and Reasonable to the Employee?
The factors for evaluating the "fairness" of a settlement in a class action provide a familiar starting point for evaluating the "internal" fairness of an FLSA compromise:
(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.
Pessoa v. Countrywide Home Loans, Inc., 2007 WL 1017577, at 3 (M.D.Fla. Apr. 2, 2007) (quoting Leverso v. SouthTrust Bank of Ala., Nat. Assoc., 18 F.3d 1527, 1531 n. 6 (11th Cir.1994)). These factors provide a general framework for evaluating an FLSA compromise, but the history and policy of the FLSA require several additional considerations.

i. The Compromise Must Resolve a Bona Fide Dispute
Lynn's Food permits approval of a compromise resolving a "bona fide dispute over FLSA provisions." 679 F.2d 1350. Accordingly, the parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute. The parties' motion (or presentation at a hearing) must describe the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise. Parties wishing to compromise a coverage or exemption issue must describe the employer's business and the type of work performed by the employee. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages. If the parties dispute the computation of wages owed, the parties must provide each party's estimate of the number *1242 of hours worked and the applicable wage. In any circumstance, the district court must ensure the bona fides of the dispute; implementation of the FLSA is frustrated if an employer can extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment.

ii. A Confidentiality Provision Contravenes FLSA Policy
Because of worry that settling with one employee will encourage other employees to assert FLSA rights, the employer may seek to maintain the confidentiality of the settlement agreement. But a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the "privatepublic" rights[16] granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute. To further Congress's intent, the Department of Labor requires the employer of an employee covered by the FLSA to display conspicuously in the workplace a detailed notice of the employee's FLSA rights.[17] By including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right.
Furthermore, Section 15(a)(3) of the FLSA proscribes an employer's retaliating against an employee for asserting rights under the FLSA. If an employee covered by a confidentiality agreement discusses the FLSA with fellow employees or otherwise asserts FLSA rights, the employer might sue the employee for breach of contract. The employer's most proximate damages from the employee's breach are the unpaid FLSA wages due other employees who learned of their FLSA rights from the employee who breached the confidentiality agreement. A confidentiality agreement, if enforced, (1) empowers an employer to retaliate against an employee for exercising FLSA rights, (2) effects a judicial confiscation of the employee's right to be free from retaliation for asserting FLSA rights, and (3) transfers to the wronged employee a duty to pay his fellow employees for the FLSA wages unlawfully withheld by the employer. This unseemly prospect vividly displays the inherent impropriety of a confidentiality agreement in settlement of an FLSA dispute.
A confidentiality provision in an FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights. "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered the national *1243 health and efficiency and as a result the free movement of goods in interstate commerce." Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706-07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The district court should reject as unreasonable a compromise that contains a confidentiality provision, which is unenforceable and operates in contravention of the FLSA.

iii. An Employee May Not Prospectively Waive His FLSA Rights
Because "FLSA rights cannot be abridged by contract or otherwise waived," Lynn's Food, 679 F.2d at 1352, an employee may not prospectively waive his right to a minimum wage or to overtime compensation. The employee may not stipulate, for example, that he is an exempt employee. The district court should reject a compromise that includes a prospective waiver, approval of which would "nullify the purposes of the [FLSA]." Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 705-08, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act.").

iv. The Compromise Must Award the Plaintiff's Counsel a Reasonable Fee
Finally, the FLSA requires the award of attorneys' fees to a prevailing employee. Dale v. Comcast Corp., 498 F.3d 1216, 1223 n. 12 (11th Cir.2007). The district court must "review . . . the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Silva v. Miller, 307 Fed.Appx. 349, 351 (11th Cir.2009) (unpublished decision). As Judge Presnell states in Bonetti v. Embarq Management Co., ___ F.Supp.2d ___, 2009 WL 2371407 (M.D.Fla. Aug. 4, 2009), which elucidates the reasonableness of an attorney's fee award in an FLSA case:
[T]he best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
In sum, if the parties submit a proposed FLSA settlement that (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

B. External Factors: Does the Compromise, Although Reasonable, Otherwise Frustrate Implementation of the FLSA
In evaluating a compromise, the district court should also consider an array of "external" or contextual factors pertinent to the statutory purpose of the *1244 FLSA. Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law or some extraordinary circumstance (say, a suddenly disabled claimant or an employer in liquidation) commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. In all instances, the district court should faithfully execute the congressional mandate for "minimum wages, promptly paid. . . for the lowest paid segment of the nation's workers." D.A. Schulte v. Gangi, 328 U.S. 108, 116, 66 S.Ct. 925, 90 L.Ed. 1114 (1946).

IV. The Effect of Judicial Review: "Confidential" FLSA Settlement Agreements and Public Access to Court Records
"Parties who settle a legal dispute rather than pressing it to resolution by the court often do so, in part anyway, because they do not want the terms of the resolution to be made public." Jessup v. Luther, 277 F.3d 926, 928 (7th Cir.2002). See generally Laurie Kratzky Dore, Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement, 74 Notre Dame L.Rev. 283 (1999). In an FLSA action, the employer worries that compromise with an employee who has vindicated a valuable FLSA right will inform and encourage other employees, who will vindicate their FLSA rights (or who will wrongly, but expensively for the employer, conclude that additional wages are due). Although perhaps both uncomfortable and expensive to an employer, vindication of FLSA rights throughout the workplace is precisely the object Congress chose to preserve and foster through the FLSA.
In the typical settled case, the district judge remains unaware of the terms of compromise, and the parties enforce the settlement agreement, if necessary, only through a separate action.[18] The parties maintain the confidentiality of their compromise by submitting a stipulation for dismissal under Rule 41, Federal Rules of Civil Procedure. In an FLSA case, however, Lynn's Food requires the parties to obtain judicial approval of the compromise. Forced to submit the agreement to the court after filing a motion for approval, the parties often seek to preserve the confidentiality of the compromise either by moving to submit the agreement under seal or by requesting an "in camera review" of the agreement.
In the typical FLSA case, however, neither attempt to conceal the compromise comports with the public's right of access to a judicial proceeding, which right is "an essential component of our system of justice [and] instrumental in securing the integrity of the process." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir.2001). The judge's "approving" a settlement constitutes a "public act," and the public "has an interest in knowing what terms of settlement *1245 a federal judge would approve." Jessup, 277 F.3d at 929.[19] As an active component of the judge's decision, the settlement agreement is presumptively a public record. See Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."); Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343 (3d Cir.1986) ("[T]he common law presumption of access applies to motions filed in court proceedings and to the settlement agreement . . . filed and submitted to the district court for approval."). The public enjoys the right both to attend a trial or hearing and to inspect and copy a judicial record.[20]
The presumption that the record of a judicial proceeding remains public "is surely most strong when the `right at issue is of a `privatepublic character,' as the Supreme Court has described employee rights under the FLSA.'" Stalnaker, 293 F.Supp.2d at 1264 (quoting Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 708, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). Sealing an FLSA settlement agreement between an employer and employee, reviewing the agreement in camera, or reviewing the agreement at a hearing without the agreement's appearing in the record (in any event precluding other employees' and the public's access to, and knowledge of, the agreement) thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace.[21]
Furthermore, before sealing a document, the district court must identify and articulate "an overriding interest based on findings that [a seal] is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the [sealing] order was properly entered." Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). Preventing the employee's co-workers or the public from discovering the existence or value of their FLSA rights is an objective unworthy of implementation by a judicial seal, which is warranted only under "extraordinary circumstances"[22] *1246 typically absent in an FLSA case. Absent an "overriding interest" in the preservation of some "higher value," the court should not abide the parties' request for a seal.
The parties' stipulation to seal the agreement (and the absence of a third-party objection to sealing the compromise agreement) fails to justify a seal. In Citizens First National Bank of Princeton v. Cincinnati Insurance Co., 178 F.3d 943, 944-45 (7th Cir.1999), Judge Posner states:
The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding. . . . [T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding. That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case. The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected unless the media are interested in the case and move to unseal. The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it). He may not rubber stamp a stipulation to seal the record.
See also Wilson v. American Motors Corp., 759 F.2d 1568, 1571 (11th Cir.1985) ("[I]t is the rights of the public, an absent third party, which are preserved by prohibiting closure of public records. . . .").
Reviewing an FLSA settlement agreement under seal conflicts with the public's access to judicial records, frustrates appellate review of a judge's decision to approve (or reject) an FLSA compromise, contravenes congressional policy encouraging widespread compliance with the FLSA, and furthers no judicially cognizable interest of the parties. A proper consideration of the intent of Congress and the public's interest in judicial transparency permits only one method to obtain judicial review of a compromise of an FLSA claim. The parties must file the settlement agreement in the public docket. See Stalnaker, 293 F.Supp.2d at 1262-64; see also Hanson v. Wells Fargo Bank, No. 08-80182-CIV, 2009 WL 1490582 (S.D.Fla. May 26, 2009) (requiring the parties to submit an unsealed copy of their settlement agreement).

V. Conclusion
To ensure that "all our able-bodied working men and women [receive] a fair day's pay for a fair day's work,"[23] the FLSA requires a covered employer to pay each employee a minimum wage and overtime. To combat the typically unequal bargaining power between employer and employee, Congress prohibits a private agreement altering FLSA rights. An employee entitled to FLSA wages may compromise his claim only under the supervision of either the Department of Labor or the district court.
If presented in an FLSA action with a notice of settlement, a stipulation for dismissal, an offer of judgment, or the like, the judicial approval required by Lynn's Food and the public's right of access to a judicial proceeding compel the *1247 parties to file their agreement in the public docket of the district court. As an initial matter, the district court must determine whether the employee purports to compromise an FLSA right. If judicial scrutiny confirms that the parties' settlement involves no compromise, the district court should approve the settlement and dismiss the case (if the employer has paid) or enter judgment for the employee (if the employer has not paid). If the parties' proposed resolution requires the employee to compromise an FLSA right, the district court must scrutinize the compromise for "fairness."
An employee's right to a minimum wage and overtime is unconditional, and the district court should countenance the creation of no condition, whether confidentiality or any other construct, that offends the purpose of the FLSA. An employer is obligated unconditionally to pay a minimum wage and overtime to the complainant and his fellow employees; the district court should not become complicit in any scheme or mechanism designed to confine or frustrate every employee's knowledge and realization of FLSA rights. Accordingly, the district court evaluating an FLSA compromise should examine first the "internal" fairness of the compromise, including the existence of a bona fide dispute and the absence of a prospective waiver, confidentiality agreement, or other provision antithetical to the FLSA. If the proposed compromise is fair and reasonable to the employee, the court should consider whether any other external factor, such as the need to resolve definitively an issue affecting similarly situated employees, recommends rejecting the compromise. If the compromise is fair and reasonable to the employee and furthers the implementation of FLSA rights in the workplace, the court should approve the compromise.
For the reasons stated in this order, the parties' stipulation of dismissal (Doc. 13) is REJECTED. On or before April 30, 2010, the parties shall request approval of the proposed agreement, which the parties must attach to the motion. In the motion, the parties should describe the bona fide dispute or disputes resolved by the compromise and confirm that the filed agreement includes every term and condition of the parties' resolution (in other words, confirm the absence of any "side deal"). In addition, the parties must either (1) demonstrate the reasonableness of the proposed attorney's fee using the lodestar approach[24] or (2) represent that the parties agreed to the plaintiff's attorney's fee separately and without regard to the amount paid to settle the plaintiff's FLSA claim.
NOTES
[1] The Middle District of Florida has experienced an influx of FLSA cases in recent years and has labored to develop a comprehensive and efficient method of reviewing an FLSA compromise. Bonetti v. Embarq Mgmt. Co., ___ F.Supp.2d ___, ___, 2009 WL 2371407, at 2 (M.D.Fla. Aug. 4, 2009) ("[N]early 2,500 FLSA cases were filed [in the Middle District of Florida] in 2007 and 2008, and approximately 20% of all civil cases pending in this District are FLSA lawsuits.").
[2] In the early twentieth century, the constitutionality of wage and hour laws was vigorously challenged. Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923), held that congressional legislation establishing a minimum wage for the District of Columbia unconstitutionally interfered with an individual's freedom to contract with an employer. Morehead v. New York ex rel. Tipaldo, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347 (1936), invalidated a New York statute establishing a minimum wage. One year later, West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937), upheld a Washington state law establishing a minimum wage for women and children. See 300 U.S. at 393, 57 S.Ct. 578 ("In dealing with the relation of employer and employed, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression."). Finally, United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941), definitively sustained the FLSA as a valid exercise of Congress's power to regulate interstate commerce.
[3] Section 216(b) of Title 29 provides: "Any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or the unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . The court in [an action to recover under the FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."
[4] In 1947, Congress passed the Portal-to-Portal Act, codified at 29 U.S.C. §§ 251 to 262, which permits compromise of an FLSA claim accruing before May 14, 1947 "if there exists a bona fide dispute as to the amount payable by the employer to his employee." But the Act leaves unanswered whether an employee may compromise a claim accruing after May 14, 1947. See Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would `nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.") (quoting Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)).
[5] As used in this order and typically elsewhere, the term "coverage" means the FLSA's application to an employeremployee relationship. The FLSA "covers" an employee if (1) an employment relationship exists, (2) the employee meets the standard for either "individual coverage" or "enterprise coverage" under the FLSA, and (3) the employee works in the United States. "Individual coverage" exists if the employee is "engaged in commerce or the production of goods for commerce" and depends upon the nature of the employee's work activity and not the business or industry of the employer. 29 U.S.C. §§ 206(a), 207(a); Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959). "Enterprise coverage" extends FLSA coverage to all employees of an "enterprise" as defined by 29 U.S.C. § 203(r). "Enterprise coverage" exists if an enterprise "has employees engaged in commerce or the production of goods for commerce" and has "annual gross volume of sales made or business done" in excess of $500,000.00. 29 U.S.C. § 203(s)(1). The term "exempt" means the inapplicability of the FLSA's minimum wage or overtime provision to an employee who, although "covered" by the FLSA, is subject to a statutory or regulatory exemption, such as the "white collar exemptions" for executive, professional, and administrative employees paid a salary of more than $455.00 per week. See 29 U.S.C. § 213; 29 C.F.R. § 541.600 (2010). The term "computation," applied to a wage, assumes coverage and non-exempt status and means calculating "hours worked" multiplied by "hourly wage," plus overtime, to determine pay.
[6] See 29 U.S.C. § 216(c) ("The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.").
[7] By settling with the Department of Labor, the employer may avoid paying liquidated damages. "The waiver provision found in section 216(c) was intended to create an incentive for employers to voluntarily accept settlements supervised by the Department of Labor." Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n. 6 (11th Cir. 1982).
[8] See Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir.2007) (stating, in dicta, that "[u]nder the FLSA, . . . there is a judicial prohibition against the unsupervised waiver or settlement of claims."); O'Connor v. United States, 308 F.3d 1233 (Fed.Cir.2002) (holding that public employees' FLSA claims were barred on the ground of accord and satisfaction, but noting that "a private sector employee cannot waive or release his right to back wage compensation and liquidated damages under the FLSA"); Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) (finding that an employee's accepting an employer's payment of back wages did not bar the employee's subsequent FLSA suit; the FLSA "is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay."); Beard v. Dist. of Columbia Housing Auth., 584 F.Supp.2d 139 (D.D.C. 2008) (holding that "an otherwise valid accord and satisfaction cannot be a defense to [an] FLSA claim").
[9] See Beard, 584 F.Supp.2d at 143 n. 4 (rejecting Martinez and finding no trend "away from finding FLSA claims non-waivable"); Yue Zhou v. Wang's Restaurant, 2007 WL 2298046, at 1 n. 1 (N.D.Cal. Aug. 8, 2007) (rejecting Martinez and noting that Congress's "failure to make any amendments that would change the non-waivability of FLSA claims. . . evinces a congressional intent that FLSA claims continue to be non-waivable"); Lewis v. Giordano's Enters., Inc., 397 Ill.App.3d 581, 336 Ill.Dec. 884, 921 N.E.2d 740 (Ill.App.Ct. 2009) (noting that Martinez relies "almost exclusively on dissenting opinions to support its argument that there is a trend among federal courts toward allowing privates settlements of bona fide wage disputes under the FLSA").
[10] In Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241 (11th Cir.2009), reh'g en banc denied, 603 F.3d 888 (11th Cir.2010), a paralegal sued her former law firm to recover overtime. After accepting an offer of judgment, the plaintiff's counsel moved for attorneys' fees and costs. Although no statute or regulation requires a pre-suit demand in an FLSA case, the district court relied on local decorum to find unreasonable the plaintiff's counsel's failure to notify the defendant law firm before suing. According to the district court, "Absent any pre-suit demand, a defendant who unknowingly failed to compensate an employee for overtime would have no opportunity to voluntarily do so outside of litigation." Stating that "there are some cases in which a reasonable fee is no fee," the district court refused to award a fee. Although the FLSA requires an award of fees to a prevailing employee, the Eleventh Circuit upheld the refusal to award fees as an "informal sanction" under the district court's inherent power to "police lawyer conduct and to guard and to promote civility and collegiality among the members of its bar." 560 F.3d at 1244. Neither the district court, nor the Eleventh Circuit panel, nor the two judges dissenting from denial of rehearing en banc acknowledge that the parties could not effectively compromise the claim before suitthe FLSA prohibits unsupervised, private compromise. In other words, even though the parties lacked the capacity to compromise the dispute without resort to judicial approval, the district court sanctioned the plaintiff's counsel for not avoiding the judiciary by a pre-suit demand. Furthermore, the district judge apparently entered judgment without determining, as required by Lynn's Food, the fairness of the compromise. Because the parties' agreement received no judicial approval, the extent to which the employee retains the right to recover any "compromised" wages or liquidated damages is uncertain; the Supreme Court prohibits an employee's release of his FLSA rights without approval by the Department of Labor or the district court.

In the words of Judge Edmondson, who wrote the panel opinion, Sahyers "is intensely fact specific [and] . . . creates no procedural rule. The panel created no procedural rule requiring pre-suit notice in FLSA cases: even notices from suing layers to lawyers to be sued in their individual capacity." Sahyers, 603 F.3d 888 (11th Cir.2010) (Edmondson, J., concurring in denial of en banc rehearing).
[11] The FLSA permits an employee to sue for unpaid wages "for and in behalf of himself. . . and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). This "opt-in" requirement distinguishes an FLSA "collective action" from the "opt-out" class action procedure provided by Rule 23, Federal Rules of Civil Procedure. Because the FLSA requires a plaintiff to "opt in," FLSA plaintiffs may not proceed as a class under Rule 23. Prickett v. DeKalb County, 349 F.3d 1294, 1296 (11th Cir.2003).
[12] A district court employs a "two-tiered approach" to decide whether to certify a collective action under the FLSA:

The first determination is made at the so-called `notice stage.' At the notice stage, the district court makes a decisionusually based only on the pleadings and any affidavits which have been submittedwhether notice of the action should be given to potential class members.
Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in `conditional certification' of a representative class. If the district court `conditionally certifies' the class, putative class members are given notice and the opportunity to `opt-in.' The action proceeds as a representative action throughout discovery.
The second determination is typically precipitated by a motion for `decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial.
At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representativesi.e. the original plaintiffsproceed to trial on their individual claims.
Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir.2001) (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995)).
[13] See Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir.1983) ("[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals existed in the broad class that they proposed. . . . Our review of that decision must be premised upon the evidence that was before the district court at that time. There was none. The judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores."); see also Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir.1991).
[14] See Bonetti v. Embarq Mgmt. Co., ___ F.Supp.2d ___, ___ n. 7, 2009 WL 2371407, at 4 n. 7 (M.D.Fla. Aug. 4, 2009) (Presnell, J.) ("A settlement in which the plaintiff would receive every penny of the wages or overtime he originally claimed was due may nonetheless be seen as a compromiseif, for example, the plaintiff waives his right to recover liquidated damagesthereby requiring judicial approval.").
[15] Lynn's Food requires approval of the compromise but offers no preferred form of final order or judgment. In other words, although permitting the district court to "enter a stipulated judgment after scrutinizing the settlement for fairness," 679 F.2d at 1353, nothing in Lynn's Food requires entry of a money judgment. For example, in a case in which the employer has already paid the stipulated amount (including the attorneys' fee), a stipulated final order dismissing the case with prejudice remains an efficient and permissible method to end the action.
[16] See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704-08, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (recognizing the "publicprivate" nature of an employee's FLSA rights; although "conferred on private party, [FLSA rights] affect[ ] the public interest.")
[17] The Department of Labor requires the posting a notice and provides examples of approved notices. See 29 C.F.R. § 516.4 (2010):

Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the [FLSA], as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy. Any employer of employees to whom section 7 of the Act does not apply because of an exemption of broad application to an establishment may alter or modify the poster with a legible notation to show that the overtime provisions do not apply.
[18] See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Enforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").
[19] See also Stalnaker v. Novar Corp., 293 F.Supp.2d 1260, 1263 (M.D.Ala.2003) (unsealing an FLSA compromise because "[a] business's general interest in keeping its legal proceedings private does not overcome the presumption of openness in the circumstances presented in this [FLSA] case").
[20] The public enjoys the right of access to the record of both civil and criminal proceedings. See Wilson v. American Motors Corp., 759 F.2d 1568, 1570 (11th Cir.1985).
[21] In camera examination equally frustrates appellate review of both a seal and a judge's approval of a settlement agreement because the district court reviews a settlement agreement in camera without articulating "specific findings" to justify a seal. See Hagestad v. Tragesser, 49 F.3d 1430, 1435 (9th Cir.1995) ("because the district court failed to articulate any reason in support of its sealing order, meaningful appellate review is impossible"). Similarly, reviewing the agreement in open court without including the agreement in the record precludes any opportunity for appellate review. But see Pessoa v. Countrywide Home Loans, Inc., No. 6:06-cv-1419-Orl-JGG, 2007 WL 1017577 (M.D.Fla. Apr. 2, 2007) (denying a motion to seal an FLSA settlement agreement but approving the agreement after review "in open court at a public hearing").
[22] See Local Rule 1.09 ("No settlement agreement shall be sealed absent extraordinary circumstances, such as the preservation of national security, protection of trade secrets or other valuable proprietary information, protection of especially vulnerable persons including minors or persons with disabilities, or protection of non-parties without either the opportunity or ability to protect themselves."); see also Joy v. North, 692 F.2d 880, 893 (2d Cir.1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.").
[23] Letter to Congress from President Franklin D. Roosevelt (May 24, 1937) (reprinted in H.R.Rep. No. 101-260 (Sept. 26, 1989), 1989 U.S.C.C.A.N. 696-97).
[24] See Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1303-04 (11th Cir.1988) ("`A request for attorney's fees should not result in a second major litigation.' The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. . . . [F]ee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.") (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).