Ashley **WALTHOUR, and Kevin Chappell, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CHIPIO WINDSHIELD REPAIR, LLC, Kingco Promotions, Inc., Levaughn Hall, and John Does I–X, Defendants.**

**Civil Action No. 1:12–CV–1491–AT.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 27, 2013.

Stephen M. Katz, The Katz Law Group, LLC, for Plaintiffs.

Joseph Michael English, Taylor English Duma LLP, for Defendant, Chipio Windshield Repair LLC.

Lewis P. Janowsky, Rynn & Janowsky, Michael David Kata, Wargo & French LLP, for Defendant, Kingco Promotions, Inc.

### ORDER

AMY TOTENBERG, District Judge.

This case brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") is before the Court on Defendants' Joint Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Complaint or, Alternatively, Motion to Stay Proceedings (hereinafter referred to as "Motion to Compel Arbitration") [Doc. 6]. The issue before the Court, whether a contractual waiver of the right to bring a collective action in a mandatory arbitration agreement is enforceable under the FLSA, is a topic of increasing debate among federal district and appellate courts. The Court finds Plaintiffs' arguments against compelling individual arbitration to be persuasive. However, as the Eleventh Circuit has upheld the enforceability of similar arbitration provisions in FLSA cases, albeit on different grounds than those presented in the instant case, the Court concludes that it must **GRANT** Defendants' Motion to Compel Arbitration and Motion to Dismiss [Doc. 6] so as to permit the Court of Appeals itself to review the distinct issues presented here more closely.

## I. BACKGROUND

Plaintiffs Ashley Walthour and Kevin Chappell brought this putative FLSA collective action against Defendants alleging that they, and other similarly situated current and former employees, were improperly misclassified as exempt from the FLSA's overtime requirements and were required to work in excess of 70 hours per week without overtime pay.[1] During their employment with Defendants each of the Plaintiffs executed a "Mandatory Arbitration of All Claims Policy" (hereinafter referred to as "the Arbitration Agreement"). The Arbitration Agreements provide, in part, that Plaintiffs, as "Employees", and Kingco Promotions, Inc., as "Employer," agreed as follows:

■ that all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any employment at-will agreement entered into between the parties and/or Employee's employment with Employer, and which may have occurred prior to or after entering into this arbitration agreement (other than claims Employee may have for workers' compensation or unemployment insurance benefits), shall be submitted to binding arbitration. Employer and Employee agree that the requirement to arbitrate shall also apply to any claim that may arise out of or relate to Employee's employment and which Employee may assert against Employer's employees, officers, directors, agents, suppliers or service providers, in their capacity as such, whether an individual or entity; and

■ the arbitrator will have no authority to consider a class action by one or more employees or otherwise preside over any form of a representative or class pro-

ceeding. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. The award of the arbitrator may be enforced in any court of competent jurisdiction. BY SIGNING THIS AGREEMENT, EMPLOYEE AND EMPLOYER ARE EACH GIVING UP HIS/HER/ITS RIGHT TO A JURY TRIAL AND HIS/HER/ITS RIGHT TO PARTICIPATE IN A CLASS ACTION BECAUSE ALL CLAIMS WILL BE RESOLVED EXCLUSIVELY THROUGH ARBITRATION. EMPLOYEE AND EMPLOYER AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN HIS/HER/ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(Doc. 6–2 at 4–5.) Defendants seek to compel arbitration of Plaintiffs' FLSA claims pursuant to the Arbitration Agreements.

## II. ANALYSIS

In support of their Motion to Compel Arbitration, Defendants assert that requiring mandatory arbitration of Plaintiffs' FLSA claims is supported by Supreme Court and Eleventh Circuit precedent and does not run afoul of the congressional intent in enacting the FLSA. In response, Plaintiffs argue a contractual waiver of their statutory right to a collective action under 29 U.S.C. § 216(b) of the FLSA is unenforceable as a matter of law. Specifically, Plaintiffs assert the following in support of the argument that the FLSA's collective action provision creates a nonwaivable substantive right:

---

1. Seven additional employees have filed notices of their consent to become party plaintiffs in this action.

(1) the statutory language refers to the collective action provision as a right, not as a procedure;

(2) § 216(b) is integral to the FLSA, making the collective action provision non-waivable;

(3) courts have held that all other provisions of § 216(b)—those providing the remedies of minimum wage and overtime backpay, liquidated damages, and attorney's fees—are substantive rights that cannot be contractually waived;

(4) the right to proceed collectively under the FLSA is not simply procedural because the Act contains its own collective action provision instead of relying on Fed. R.Civ.P. 23's class action procedure;

(5) the Department of Labor, the agency charged with enforcement of the FLSA, has taken the position that the collective action provision is a substantive non-waivable right; and

(6) the legislative history of the Act demonstrates that the right to proceed in a collective action to enforce the provisions of the FLSA is integral to the remedial purposes of the Act.

Defendant's Arbitration Agreement here requires its employees, as a condition of employment, to submit their claims to mandatory arbitration and requires the employees to give up their right to proceed as a class of one of more employees in any proceeding. The Court considers the enforceability of the Arbitration Agreement under the provisions of the Federal Arbitration Act, the Fair Labor Standards Act, and the relevant case law addressing mandatory arbitration agreements in the employment context below.

**A. The Federal Arbitration Act**

 The validity of an arbitration agreement is generally governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, which was enacted in 1925 to reverse the longstanding judicial hostility to arbitration agreements and to place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir.2005). "The FAA embodies a liberal federal policy favoring arbitration agreements." *Caley*, 428 F.3d at 1367 (internal quotations omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The Supreme Court has long recognized the arbitrability of federal statutory claims, noting that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

 Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. An agreement to arbitrate federal statutory claims is generally enforceable unless "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. Where such a Congressional intention exists, it may be shown by reference to the text of the statute, its legislative history, or "an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Id.* The burden is on the party opposing arbitration to show that Congress intended to preclude waiver of a judicial forum in favor of an arbitral forum for the statutory claims. *Id.* "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be re-

solved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24–25, 103 S.Ct. 927.

## B. The Fair Labor Standards Act

The FLSA was enacted as part of President Franklin D. Roosevelt's New Deal legislation in 1938. According to the Supreme Court in *Brooklyn Sav. Bank v. O'Neil*, "the prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (citing 81 Cong. Rec. 7652, 7672, 7885; 82 Cong. Rec. 1386, 1395, 1491, 1505, 1507; 83 Cong. Rec. 7283, 7298, 9260, 9265; H. Rep. No. 1452, 75th Cong., 1st Sess., p. 9; S. Rep. No. 884, 75th Cong., 1st Sess., pp. 3, 4), *reh'g denied*, 325 U.S. 893, 65 S.Ct. 1189, 89 L.Ed. 2005 (1945). "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Id.* at 706–707, 65 S.Ct. 895.

In order to effectuate the comprehensive remedial purposes of the FLSA, § 216(b) provides that any employer who violates the minimum wage and overtime provisions of the Act is liable to their employees for unpaid minimum wages or overtime compensation, additional liquidated damages, attorney's fees and expenses. Employers are also subject to "equitable relief as may be appropriate to effectuate the purposes of [§ ] 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The FLSA further contains a "right of action" provision whereby employees may enforce the damages provision as follows:

An action to recover the liability prescribed in [§ 216(b) ] may be maintained against any employer ... *by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* (emphasis added). This collective action provision is referred to in the statute as a right in itself, not merely a procedural mechanism by which to enforce other rights established by Congress in the FLSA. *Id.* (stating that "[t]he right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action" terminates only if the Secretary of Labor brings its own complaint for violations of the FLSA under § 217 seeking payment of unpaid minimum wages or overtime compensation or under § 216(a) seeking legal or equitable relief for willful violations of § 215 sought as a result of alleged violations of § 215(a)(3) of the Act).

In *Hoffmann–La Roche Inc. v. Sperling*, the Supreme Court examined the legislative history behind the FLSA's collective action provision:

In 1938, Congress gave employees and their "representatives" the right to bring actions to recover amounts due

under the FLSA. No written consent requirement of joinder was specified by the statute. In enacting the Portal–to–Portal Act of 1947, Congress made certain changes in these procedures. In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added. *See* 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell).... Congress left intact the "similarly situated" language providing for collective actions, such as this one.

493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (as incorporated into the Age Discrimination in Employment Act "ADEA"). The Court in *Hoffmann* thus concluded that because "Congress left intact the "similarly situated" language providing for collective actions" in its amendments "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Id.* The July 8, 1937 Senate Report from the Committee on Education and Labor regarding the FLSA states:

> The right of individual or collective employees to bargain with their employers concerning wages and hours is recognized and encouraged by this bill. It is not intended that this law shall invade the right of employer and employee to fix their own contracts of employment, wherever there can be any real, genuine bargaining between them.

75th Cong., 1st Sess., S. Rep. No. 884, p. 3. Pursuant to § 216(b) of the Act, Congress has stated its policy that FLSA plaintiffs should have the right to proceed collectively. *See Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. at 173, 110 S.Ct. 482.

Moreover, both the Supreme Court and the Eleventh Circuit have held that permitting contractual waiver of the other rights and remedies provided alongside the collective action provision in § 216(b)—the right to minimum wage, overtime compensation, liquidated damages, and attorney's fees—would nullify the purposes of the Act. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. at 707, 65 S.Ct. 895 (addressing whether an employee's written waiver of rights under § 216 barred a subsequent action to recover statutory damages and reasoning that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy"); *Silva v. Miller,* 307 Fed.Appx. 349 (11th Cir.2009) (holding that the "FLSA provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions" even in a settlement agreement). "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor,* 679 F.2d 1350, 1352 (11th Cir.1982) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895.) "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (internal citations omitted)).

## C. Enforceability of the Arbitration Agreement

Notwithstanding the Supreme Court's long history of favoring employees' sub-

stantive rights under § 216(b) of the FLSA over the contractual rights of their employers, *see generally Barrentine*, 450 U.S. 728, 101 S.Ct. 1437, the increasing trend of federal courts has been to uphold class/collective action waivers in mandatory arbitration agreements. Although neither the Supreme Court nor the Eleventh Circuit has squarely addressed the issue whether an employee's inability to proceed on a class or collective basis in arbitration prevents her from vindicating her substantive rights under the FLSA, precedent from both courts arguably control this Court's determination. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir.2005) (FLSA); *see also Gilmer*, 500 U.S. 20, 27–33, 111 S.Ct. 1647 (ADEA).

In *Caley*, the Eleventh Circuit found that an arbitration agreement that precluded class actions in a case brought under the FLSA, the ADEA, and the Employee Retirement Income Security Act (ERISA) was not unconscionable under Georgia contract law and was therefore enforceable. 428 F.3d at 1378. Following the Supreme Court's rationale in *Gilmer* that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,'" *Caley* held that the prohibition of class actions in an arbitration agreement was consistent with the FAA's goals. *Id.* (quoting *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647). Although *Caley*, which was decided solely on state law grounds, did not determine whether the right to proceed in a collective action was a non-waivable substantive right under the FLSA, it has been uniformly cited by the district courts in this Circuit as binding authority for the proposition that FLSA class waivers in arbitration agreements are enforceable. *See infra* at 1275–76.

Defendants and the other courts addressing this issue rely on the Supreme Court's decision in *Gilmer* rejecting an argument similar to Plaintiffs' here in a case concerning the ADEA, which expressly adopts the FLSA collective action provision. *Gilmer*, 500 U.S. 20, 111 S.Ct. 1647. *Gilmer* held that the compulsory arbitration of ADEA claims pursuant to arbitration agreements was not inconsistent with the statutory framework and purposes of the ADEA. *Id.* at 27–33, 111 S.Ct. 1647. The *Gilmer* Court found no inherent conflict between the ADEA's goal of furthering important social policies and enforcing arbitration of the plaintiff's age discrimination claims. *Id.* at 27–28, 111 S.Ct. 1647 (noting previous holdings that claims under the Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933, all of which are designed to advance important public policies, are appropriate for arbitration). "[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 28, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

In rejecting the plaintiffs' argument that compulsory arbitration was improper because it deprived claimants of the judicial forum provided for by the ADEA, the Supreme Court in *Gilmer* noted that "if Congress intended the substantive protection afforded [by the ADEA] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." *Id.* at 29, 111 S.Ct. 1647 (quoting *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346). The plaintiff in *Gilmer* argued that compelling arbitration would violate the purposes of the ADEA because it would not allow for class actions. The *Gilmer* Court rejected

the plaintiffs' argument—characterizing it as a challenge regarding the adequacy of the arbitration procedures as opposed to the violation of a substantive right—because a collective proceeding in arbitration was in fact available there. *Id.* at 30, 32, 111 S.Ct. 1647 (noting that "the NYSE rules also provide for collective proceedings"). Nonetheless, the Court went on to state, as dicta, that

> even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.

*Id.* at 32, 111 S.Ct. 1647 (quoting *Nicholson v. CPC Int'l Inc.,* 877 F.2d 221, 241 (3rd Cir.1989)).

Contrary to how it has sometimes been interpreted, *Gilmer* did not expressly decide whether the right to proceed collectively is a substantive right under the ADEA. *Gilmer* simply held that because "statutory claims may be the subject of an arbitration agreement," arbitration agreements may be enforceable " 'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " *Id.* at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. at 628, 105 S.Ct. 3346). The Court in *Gilmer* concluded that there was no indication from the text or history of the ADEA that Congress intended to afford substantive protection against waiver of the right to a judicial forum in light of the ADEA's flexible approach to resolution of claims and the Equal Employment Opportunity Commission's informal methodology of out-of-court dispute resolution. *Id.* at 29, 111 S.Ct. 1647. Thus, while *Gilmer* established that FLSA

claims are arbitrable under the FAA in light of the strong federal policy favoring arbitration, the question whether the right to proceed collectively under the FLSA in either arbitration or a judicial forum may be waived remains undecided by the Supreme Court.

Nonetheless, every circuit court save one addressing the issue has held that plaintiffs' inability to proceed on a class or collective basis in arbitration does not prevent them from vindicating their substantive rights under the FLSA. *See Owen v. Bristol Care, Inc.,* 702 F.3d 1050 (8th Cir. 2013) ("There is no inconsistency between either the FLSA text or its legislative history and the conclusion that arbitration agreements containing class waivers are enforceable in cases involving the FLSA."); *Carter v. Countrywide Credit Industries, Inc.,* 362 F.3d 294, 298 (5th Cir.2004) (citing *Gilmer* and rejecting plaintiffs' claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA); *Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir.2002) (holding that where there is "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action" a plaintiff's "inability to bring a class action cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); *Horenstein v. Mortgage Market, Inc.,* 9 Fed.Appx. 618, 619 (9th Cir.2001) ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the [FLSA]."). *But see Skirchak v. Dynamics Research Corp.,* 508 F.3d 49 (1st Cir.2007) (affirming district court's finding that class action waiver in arbitration agreement was unconscionable and contrary to the purpose of the FLSA).

Moreover, Plaintiffs' argument that the right to bring a collective action is a non-waivable substantive right under the FLSA has been rejected by every other district court in this Circuit to have considered the issue. *See Zekri v. Macy's Retail Holdings, Inc.*, No. 1:10–CV–1740–MHS, 2010 WL 4660013 (N.D.Ga. Nov. 4, 2010) (Shoob, J.) (finding plaintiff's argument that the right to FLSA collective action is substantive lacked any merit in light of Supreme Court, Eleventh Circuit, and other circuit court decisions upholding the waiver of the right to proceed in collective actions) [2]; *DeOliveira v. Citicorp N. Am., Inc.*, No. 8:12–CV–251–T–26–TGW, 2012 WL 1831230 (M.D.Fla. May 18, 2012) (Lazzara, J.) (holding that the Eleventh Circuit's decision in *Caley v. Gulfstream Aerospace Corp.* was binding on the issue of enforceability of collective action waiver in an arbitration agreement); *Slawienski v. Nephron Pharm. Corp.*, No. 1:10–CV–0460–JEC, 2010 WL 5186622, *2 (N.D.Ga. Dec. 9, 2011) (Carnes, J.) (granting motion to compel arbitration of plaintiffs' FLSA claims and noting that "[f]ollowing *Caley*, district courts in this circuit have routinely upheld class action waivers in the employment context"); *Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 10–22398–Civ.–UU, 2011 WL 6794438, *3–4 (S.D.Fla. Apr. 19, 2011) (Ungaro, J.) (noting that contractual waiver of right to participate in FLSA § 216(b) collective action

was not substantively unconscionable because it prevented employee from engaging in "protected concerted activity" in violation of federal labor laws and holding that class action relief was not essential to the vindication of the substantive law at issue where plaintiff had the opportunity to litigate her individual claim for overtime under the FLSA); *Delano v. Mastec, Inc.*, No. 8:10–CV–320–T–27MAP, 2010 WL 4809081 (M.D.Fla. Nov. 18, 2010) (Whittemore, J.) (rejecting plaintiff's argument that provision waiving plaintiffs' right under 29 U.S.C. § 216(b) to pursue their FLSA claims in a collective action was unenforceable and compelling arbitration of plaintiffs' claims individually); *La Torre v. BFS Retail & Commercial Operations, LLC*, No. 08–22046–CIV, 2008 WL 5156301 (S.D.Fla. Dec. 8, 2008) (O'Sullivan, J.) (applying *Caley* and holding that arbitration provision that purportedly precluded participation in class action under FLSA was not substantively unconscionable).

■ Nonetheless, Plaintiffs' arguments here are convincing, and the Court finds that persuasive authority exists to support Plaintiffs' argument that the right to participate in a FLSA collective action is substantive rather than merely procedural.[3] *See Skirchak v. Dynamics Research Corp., Inc.*, 432 F.Supp.2d 175, 179 (D.Mass. 2006), *aff'd and remanded*, 508 F.3d 49, 62 (1st Cir.2007) [4]; *In re D.R. Horton, Inc.*,

---

**2.** Counsel for Plaintiffs here was also counsel for the plaintiffs in *Zekri* in which Judge Shoob considered and rejected arguments similar to those advanced here.

**3.** Plaintiffs' additional argument that the arbitration agreement violates Georgia law "absent a clear, unambiguous, and conscious intent to surrender" Plaintiffs' statutory rights is unpersuasive. The Court does not find the language of the agreement at issue here to be ambiguous as Plaintiffs contend because of its reference to a "representative or class pro-

ceeding" as opposed to a "collective proceeding."

**4.** In *Skirchak*, the First Circuit recognized "that there is a policy debate about whether class action waivers essentially act as exculpatory clauses, allowing for violations of laws where individual cases involve low dollar amounts and so will not adequately address or prevent illegality." However, the *Skirchak* Court declined to decide "whether waivers of class actions under the FLSA are inherently unfair or unenforceable," but stated that in its

357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012); *Chen–Oster v. Goldman, Sachs & Co.*, 785 F.Supp.2d 394 (S.D.N.Y.2011); *Raniere v. Citigroup Inc.*, 827 F.Supp.2d 294 (S.D.N.Y.2011); *Sutherland v. Ernst & Young LLP*, 847 F.Supp.2d 528 (S.D.N.Y.2012); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F.Supp.2d 916, 922–23 (M.D.Tenn.2003) (finding that arbitration agreement which, among other things, did not contain provision allowing class actions was not enforceable because it would not effectively vindicate employee's statutory rights under the FLSA). *See also Delano*, 2010 WL 4809081, at *4 ("An arbitration agreement precluding class arbitration, whether expressly or impliedly, may be unenforceable if it effectively prevents claimants from vindicating their statutory rights in the arbitral forum. Accordingly, courts have invalidated class action waivers where plaintiffs demonstrated that their inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all.") As the district court in *Raniere* pointed out, "[t]here are good reasons to hold that a waiver of the right to proceed collectively under the FLSA is per se unenforceable" because it violates the substantive provisions of the Act as illustrated by its legislative history. 827 F.Supp.2d at 312.

The question of whether the statutory right to a collective action created by the FLSA may be waived in an arbitration agreement depends upon Congress's intent as evidenced by the Act. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. at 704–05, 65 S.Ct. 895 ("With respect to private rights created by a federal statute, such as Section 216(b), the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute."); *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. Where such a congressional intention exists, it may be shown by reference to the text of the statute, its legislative history, or by a broader consideration of the legislative policy behind the provision as evidenced by its legislative history and the provisions in and structure of the Act. *Id.* at 706, 65 S.Ct. 895; *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647 (noting Congressional intent may also be shown by demonstrating "an 'inherent conflict' between arbitration and the [statute's] underlying purposes"). The language of § 216(b) indicates that Congress did not intend that the collective action provision be waivable. The collective action provision is referred to in § 216(b) as a "right of action" not merely as a procedure by which to enforce FLSA rights.[5] Section 216(b) provides that

view the FLSA statutorily created an interest in class actions. 508 F.3d at 60, 62.

5. Indeed, the FLSA includes as its own substantive provision providing the right to bring a collective action rather than relying on the procedure for bringing a class action provided in Fed.R.Civ.P. 23. As this Court noted recently in a decision denying interlocutory appeal of a conditional certification of a collective action,

The Eleventh Circuit has long recognized critical distinctions between certification of a collective action under § 216(b) of the FLSA and class certification under Fed. R.Civ.P. 23(b). *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12 (11th Cir.

1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."). Participants in a putative collective action under § 216(b) of the FLSA must affirmatively opt into the suit such that the decision to certify a collective action, on its own, does not create a class of plaintiffs; rather the "existence of a collective action under § 216(b) ... depend[s] on the active participation of other plaintiffs."[5] *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–60 (11th Cir.2008). "Unlike opt-in collective actions under § 216(b), a district

"[t]he right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action shall terminate" only if the Secretary of Labor brings its own complaint under § 217 seeking payment of unpaid minimum wages or overtime compensation or under § 216(a) seeking legal or equitable relief for willful violations of § 215. Thus, the statutory text of § 216(b) itself suggests that the collective action provision is a substantive right and not subject to contractual waiver.

In addition, the structure of the FLSA supports a conclusion that Congress intended that the right to proceed collectively was substantive rather than procedural. The right of action, including a collective action, is contained in the same provision of the Act that sets forth the substantive remedies guaranteed by the FLSA which have all been held to be non-waivable rights. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. at 707, 65 S.Ct. 895; *Barrentine*, 450 U.S. at 740, 101 S.Ct. 1437 (1981); *Lynn's Food Stores*, 679 F.2d at 1352. Thus, by placing it the section of the statute alongside the compensatory remedies, Congress further evidenced its intent that the right to proceed collectively was an integral substantive right afforded by the FLSA. As the Eleventh Circuit has previously held "Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employee." *Lynn's Food Stores*, 679 F.2d at 1352.[6]

court's decision to certify a Rule 23(b) class binds all the class members." *Id.* (citing *Cameron–Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1249 (11th Cir.2003) (detailing the wide range of differences between § 216(b) collective action and Rule 23 class action)). Thus, the Court finds the *[Wal–Mart Stores, Inc. v. Dukes]* decision, employing a "rigorous analysis" for determining class certification under Fed. R.Civ.P. 23, is inapplicable to a district court's determination of whether to provide notice to a conditional class of opt-in plaintiffs under 18 U.S.C. § 216(b) that will be re-examined once discovery and the record are more complete. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *compare Morgan*, 551 F.3d at 1260–61 ("[T]he importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees.") with *[Wal–Mart Stores, Inc. v.] Dukes*, [—— U.S. ——], 131 S.Ct. [2541] at 2552 [180 L.Ed.2d 374 (2011) ] ("A party seeking class certification [under Rule 23] must affirmatively ... prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc ... certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied ...") (internal citations omitted).

August 21, 2012 Order denying Defendant's Motion for Certification of Issue for Interlocutory Appeal in *Jewell v. Aaron's, Inc.*, Civil Action No. 1:12–cv–0563, at 14–15. Moreover, numerous courts, including district courts in this Circuit, have refused to apply Fed.R.Civ.P. 23 to collective actions under the FLSA distinguishing the more stringent commonality requirement in Rule 23 from the "similarly situated" requirement in FLSA collective actions. *See, e.g., Rindfleisch v. Gentiva Health Services, Inc.*, Civil Action No. 1:10–cv–3288–SCJ, 2011 WL 7662026, *4 (Dec. 29, 2011).

6. Indeed, the Department of Labor, the agency charged with enforcement of the FLSA takes the position that § 216(b) grants employees a distinct substantive right to participate in a collective adjudication of their claims with their consent. *See Long John Silver's Restaurants v. Cole*, 514 F.3d 345, 348 n. 4 & 5 (4th Cir.2008) (noting that the Secretary of Labor filed amicus curiae submissions in both district and appellate court stating the Department's position that the FLSA § 216(b) provision constitutes substantive law and was not waivable). Although the Court is not bound by the Department of Labor's interpretation of the FLSA, "as the agency charged with implementing the act, however, the Department's interpretation is entitled to considerable deference." *Patel v. Quality Inn*

The legislative history of the FLSA indicates that the collective action provision of § 216(b) was integral to the Act's overall purpose. In *Hoffmann–La Roche Inc. v. Sperling*, the Supreme Court rejected an argument that Congress intended to relieve employers from the burden of multiparty actions in the 1947 amendments to the FLSA. 493 U.S. at 173, 110 S.Ct. 482. As originally enacted in 1938, the FLSA gave employees and their "representatives" the right to bring actions to recover backpay for violations of the minimum wage and overtime provisions. *Id.* No written consent requirement of joinder was specified by the statute. *Id.* In 1947 Congress amended the Act in part, in response to "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome," abolished the representative action by plaintiffs not themselves possessing claims, and added the requirement that an employee file a written consent. *Id.* (citing 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell)). The Supreme Court in *Hoffmann* concluded that because "Congress left intact the "similarly situated" language providing for collective actions ... [t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Id.* The Court's discussion in *Hoffmann* strongly suggests that Congress intended that employees be afforded a non-waivable right to proceed as a class in pursuing their statutory remedies under the FLSA.

Consideration of the legislative policy behind the FLSA and its collective action provision further suggests that the right to proceed collectively cannot be waived. "The legislative debates indicate that the prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population ... who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. at 716 n. 18, 65 S.Ct. 895 (citing 81 Cong. Rec. 7652, 7672, 7885; 82 Cong. Rec. 1386, 1395, 1491, 1505, 1507; 83 Cong. Rec. 7283, 7298, 9260, 9265. *See also* H. Rep. No. 1452, 75th Cong., 1st Sess., p. 9; S. Rep. No. 884, 75th Cong., 1st Sess., pp. 3, 4). In addition, a central purpose of the FLSA's collective action provision is to allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche Inc.*, 493 U.S. at 170, 110 S.Ct. 482. As the purpose of the collective action provision is to decrease costs for the "unprotected, unorganized and lowest paid" employees, it would violate the very purpose of the Act to allow waiver of the right of these employees to pool their resources together to pursue their statutory remedies. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. at 704–707, 65 S.Ct. 895. "Therefore, an otherwise enforceable arbitration agreement should not become the vehicle to invalidate the particular Congressional purposes of the collective action provision and the policies on which that provision is based." *Raniere v. Citigroup Inc.*, 827 F.Supp.2d at 313–14.

■ In sum, the Court finds persuasive authority to support Plaintiffs' assertion here that the right to proceed collectively, either in a judicial forum or in arbitration, is a substantive right afforded by the FLSA.[7] However, there are also requisite

*South*, 846 F.2d 700, 703 (11th Cir.1988) (citing *Tony and Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985)).

7. Additionally, although not argued by Plaintiffs here, the Court finds persuasive the National Labor Relation Board's recent decision in *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012). Although the validity of the NLRB's order on the merits in

grounds for enforcing the Arbitration Agreements at issue in this case in light of the trend in the Eleventh Circuit to uphold class waivers in employment agreements and the strong presumption in favor of arbitration. Thus, while the Court itself doubts that the Arbitration Agreements are enforceable in light of the express waiver of the Plaintiffs' right to collective action under the FLSA in *any* forum, in the absence of binding precedent holding that such a provision is unenforceable as a matter of law, the Court in an exercise of prudence will require that the parties proceed to arbitration pursuant to the provisions of the FAA. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24–25, 103 S.Ct. 927 ("The Arbitration Act establishes that, as a matter of federal law, ***any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,*** whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") (emphasis added). Until either the Supreme Court or the Eleventh Circuit put to rest the question of whether a collective action is a substantive right under the FLSA which cannot be contractually waived by an employer, this Court must order such claims to mandatory arbitration.

## III. CONCLUSION

Accordingly, Defendants' Motion to Compel Arbitration and Motion to Dismiss

---

[Doc. 6] is **GRANTED.**[8] The Court declines to stay the case pending arbitration or appeal. In the event court action is necessary to resolve issues arising out of the arbitration pursuant to 9 U.S.C. § 3, the parties may file a separate civil action. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

---

*In re D.R. Horton* is in question in light of the decision of the United States Court of Appeals for the District of Columbia in *Canning v. NLRB*, 705 F.3d 490 (D.C.Cir.2013), the Board's reasoning nonetheless is persuasive. This Court's analysis of *In re D.R. Horton* is set forth in a contemporaneous Order granting a motion to compel arbitration in *Strozier v. E\*Trade Financial Corporation*, No. 1:12–cv–0330–AT, another FLSA putative collective action before this Court that also involves the enforceability of an arbitration agreement

that effectively precludes the plaintiffs' right to proceed in a collective action. *See* Feb. 27, 2013 Order on Defendant's Motion to Compel Arbitration.

8. Plaintiffs' Motion for Leave to File Excess Pages [Doc. 10] and Motion to Submit Supplemental Legal Authority in Opposition to Defendants' Joint Motion [Doc. 22] are **GRANTED NUNC PRO TUNC** [Doc. 22].